**UNITED STATES MARSHALS SERVICE, Appellant,**

v.

**William A. MEANS, Mathew King, a/k/a Noble Redman, and all other persons occupying the location called "Yellow Thunder Camp at Victoria Lake in the Black Hills National Forest", Appellees.**

No. 82–2489.

United States Court of Appeals, Eighth Circuit.

Submitted March 17, 1983.

Decided Dec. 29, 1983.

Larry B. Leventhal, Minneapolis, Minn., Bruce Ellison, Roger Finzel, Rapid City, S.D., for appellee.

Russell Means, Rapid City, S.D., pro se.

Philip N. Hogen, U.S. Atty., Sioux Falls, S.D., Reed Rasmussen, Asst. U.S. Atty., Rapid City, S.D., Carol E. Dinkins, Asst. Atty. Gen., Anthony C. Liotta, Deputy Asst. Atty. Gen., Peter R. Steenland, Jr., Nancy B. Firestone, Attys., Dept. of Justice, Washington, D.C., for appellant; Lawrence E. Fischer, Deputy Gen. Counsel, U.S. Marshals Service, McLean, Va., of counsel.

Before BRIGHT, JOHN R. GIBSON, Circuit Judges, and HANSON, Senior District Judge.*

JOHN R. GIBSON, Circuit Judge.

The significant question before us concerns the expenditure of federal funds for fees and expenses of witnesses subpoenaed by indigent civil litigants. The United States brought an action against some forty Sioux Indians and others (the appellees) living in the Yellow Thunder Camp, claiming that the lands were being illegally occupied. The district court[1] found that the Government had brought a number of experts to testify, and that certain witnesses were necessary for appellees' defense to obviate dismissal for non-prosecution. It ordered the United States Marshals Service to serve the subpoenas and to pay for minimum fees and costs for the subpoenaed witnesses to appear. The United States Marshals Service now appeals from that order, arguing that neither the *in forma pauperis* statute, 28 U.S.C. § 1915 (1976 & Supp. V 1981), nor the due process clause of the fifth amendment permits the district court to compel payment for such fees and expenses. Although we agree that Section 1915 does not provide generalized authority for government payment of a civil indigent's witness fees, we conclude that alternatives, by statute or rule, authorize payment of fees. We therefore remand this case to the district court to enter its order in accordance with this opinion.

The underlying controversy in the ongoing trial, now recessed pending the outcome of this appeal, concerns the existence of Yellow Thunder Camp, a small, largely American Indian community, located within the Black Hills National Forest. On April 22, 1981, application was submitted on behalf of Yellow Thunder Camp members and the Lakota Nation for a special use permit allowing them to establish a religious, cultural, and educational community in an 800-acre area of the Black Hills National Forest. The United States Forest Service denied the request on August 24, 1981, and ordered those within the Yellow Thunder Camp to leave the site by September 8, 1981. A timely administrative appeal was taken.

On September 9, 1981, the United States filed an action against the named principals of the Yellow Thunder Camp, contending that they illegally occupied the lands and seeking injunctive and declaratory relief. On September 15, the Camp principals brought a separate action against officials of the United States Forest Service, claiming authority to utilize the lands involved and further claiming that Forest Service officials had circumvented legally established procedures and criteria in denying its special use permit application. They too sought declaratory and injunctive relief.

---

\* The Honorable William C. Hanson, United States Senior District Judge for the Northern District of Iowa, sitting by designation.

1. The Honorable Donald E. O'Brien, United States District Judge for the District of South Dakota.

On December 9, 1981, the district court consolidated both actions, *United States v. Means, et al.,* Civ. No. 81–5131, and *Means, et al. v. Mathers, et al.,* Civ. No. 81–5135, for trial. With the concurrence of the parties, the court also assumed jurisdiction over the pending administrative appeal and agreed to consider it within the consolidated cases.

The district court granted *in forma pauperis* status to appellees under 28 U.S.C. § 1915 and stated at the outset of trial that it expected the United States Marshals Service to serve appellees' subpoenas and to pay fees and expenses for appellees' witnesses. On four occasions during the pretrial hearings, the United States Marshals Service, at the court's direction, had paid fees and costs for appellees' witnesses. It declined to do so, however, as to appellees' trial witnesses, claiming it lacked statutory authority.

On November 23, 1982, the district court, citing 28 U.S.C. § 1915 and due process considerations, issued its order which directed "that the United States Marshals Service shall process and pay all witness fees and costs of Yellow Thunder witnesses" and denied the motion by the United States Marshals Service to quash the subpoenas. On November 24, 1982, the district court issued its order denying the motion for reconsideration submitted by the United States Marshals Service. It supplemented its order by incorporating a memorandum opinion on November 29, 1982.

The district court allowed the Government to conclude the presentation of its case, including testimony offered by a number of lay and expert witnesses. Thereafter the court recessed trial proceedings pending the outcome of this appeal.

## I.

 We must first consider the threshold issue of our appellate jurisdiction. Under 28 U.S.C. § 1291 (1976), the courts of appeals are vested with "jurisdiction of appeals from all final decisions of the district courts of the United States except where a direct review may be had in the Supreme Court." Although the order granting witness fees to appellees is not a "final decision" in the sense that it disposes of the litigation, we must give that term a "practical rather than a technical construction." *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949). Under the "collateral order" doctrine articulated by the Supreme Court in *Cohen,* this court has authority to consider an appeal of such an order if "the order ... conclusively determine[s] the disputed question, resolve[s] an important issue completely separate from the merits of the action, and [is] effectively unreviewable on appeal of a final judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978); *accord, Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* —— U.S. ——, 103 S.Ct. 927, 934, 74 L.Ed.2d 765, 777 (1983) (stay of action pending state court resolution of identical issue was appealable); *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 375, 101 S.Ct. 669, 674, 66 L.Ed.2d 571 (1981) (order denying motion to disqualify was not appealable).

The district court's order satisfies the requirements of the collateral order doctrine. First, the order conclusively determines that the payment of witness fees by the government is authorized under the *in forma pauperis* statute and is essential for a fair trial. Second, the order presents a serious and unsettled question concerning the authorization of payment of a civil indigent's witness fees. Third, the validity of that order does not rest on a resolution of the merits of the main dispute. Fourth, review cannot await final judgment because, at that time, the United States Marshals Service, as a non-party to the main action, will have effectively lost the right to have the issue decided. *United States v. Schiavo,* 504 F.2d 1 (3d Cir.1974); *see generally* C. Wright, A. Miller, & E. Cooper, 15 *Federal Practice and Procedure* § 3911, at 482–83 (1976). Furthermore, the order requires an immediate payment prior to the entry of final judgment. For these reasons, we assume jurisdiction to hear this appeal

as an appeal from a collateral order,[2] and now turn to the merits of the order.

## II.

We must decide whether the district court has the authority to order the United States Marshals Service to pay fees and expenses for appellees' witnesses. The district court's order, and the briefs of the parties as well, have couched the issue broadly in terms of indigents' rights under the *in forma pauperis* statute, 28 U.S.C. § 1915 (1976 & Supp. V 1981), and under the due process clause. The United States Marshals Service argues that such expenditure of public monies is not expressly authorized by Section 1915 and is not required by due process. Yellow Thunder Camp argues that Section 1915 implicitly confers authority upon the district court to order such payment. It further contends that the due process requirement of meaningful access to the courts mandates a court's discretionary power to order government payment of witness fees and costs for a party proceeding *in forma pauperis*. As we are presented with both statutory and constitutional grounds to support or deny the relief requested, we must examine the statutory claim before considering the constitutional question. *Califano v. Yamasaki*, 442 U.S. 682, 692, 99 S.Ct. 2545, 2553, 61 L.Ed.2d 176 (1979).

In passing upon the scope of Section 1915, we look first at its language, which, if unambiguous, is ordinarily to be regarded as conclusive in the absence of a clearly expressed legislative intent to the contrary. *Dickerson v. New Banner Institute, Inc.*, —— U.S. ——, 103 S.Ct. 986, 990, 74 L.Ed.2d 845, 853 (1983). The plain language of 28 U.S.C. § 1915 does not provide expressly for government payment of witness fees:

(a) Any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a person who makes affidavit that he is unable to pay such costs or give security therefor . . . .

. . . .

(c) The officers of the court shall issue and serve all process, and perform all duties in such cases. Witnesses shall attend as in other cases, and the same remedies shall be available as are provided for by law in other cases.

Because other subsections of Section 1915 specifically enumerate those costs and fees that are encompassed by the statute, we cannot, in the absence of any clear statement to the contrary, infer congressional intent to have it cover witness fees and expenses. The district court, in construing Section 1915 to cover witness fees, relied upon *Morrow v. Igleburger*, 584 F.2d 767, 772 n. 7 (6th Cir.1978), *cert. denied*, 439 U.S. 1118, 99 S.Ct. 1027, 59 L.Ed.2d 78 (1979). Since the issuance of the district court's order, though, the Sixth Circuit has abandoned the view that Section 1915 encompasses witness fees, characterizing the *Morrow* footnote as dicta. *Johnson v. Hubbard*, 698 F.2d 286, 290 n. 4 (6th Cir.1983) (Section 1915(c) does not require government payment of witness fees and costs for indigent inmate of state mental hospital in indigent's action under 42 U.S.C. § 1983).

We agree with the result in *Johnson*.[3] The Supreme Court in *United States v. MacCollom*, 426 U.S. 317, 321, 96 S.Ct. 2086, 2089, 48 L.Ed.2d 666 (1976), declared that "the expenditure of public funds [on behalf of an indigent litigant] is proper only when authorized by Congress . . . ." We do

---

**2.** Since we conclude this appeal falls within the collateral order doctrine, we need not address the Government's alternative argument that this appeal should be treated as a petition for mandamus under 28 U.S.C. § 1651 (1976).

**3.** While we agree with the result in *Johnson*, we disagree with the Sixth Circuit's unnecessary application of the 1965 amendment of 28

U.S.C. § 1825 (1976) to infer Congress's intent as to Section 1915, which was passed far earlier. The Supreme Court has warned that the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one. *Russello v. United States*, —— U.S. —— at ——, 104 S.Ct. 296 at 300, 78 L.Ed.2d 17 (1983).

not interpret Section 1915(c), which requires the officers of the court to "issue and serve all process" and provides that "[w]itnesses shall attend as in other cases, and the same remedies shall be available as are provided for by law in other cases," to constitute such authorization. We agree with the Sixth Circuit that courts that have found such authority in Section 1915 have done so without thorough consideration of the issues. *Johnson, supra,* 698 F.2d at 290 n. 4 (citing *White v. Sullivan,* 368 F.Supp. 292, 293 (S.D.Ala.1973) (without explanation, court mentions government payment of witness fees and expenses for indigent civil party pursuant to Section 1915(c))). Thus, we conclude that 28 U.S.C. § 1915 neither expressly nor implicitly authorizes the prepayment of the witness fees and expenses as ordered by the district court.

### III.

■ We believe, however, that other authority exists to authorize payment of the witness fees under the singular factual situation in this case. Although the order of the district court raised the Section 1915 issue over which the parties have so strenuously battled, 28 U.S.C. § 1825, as well as Fed.R.Evid. 706, provides the district court with support for the result it reached. Congress explicitly provides for the payment of witness fees by the United States Marshals Service in cases where the United States is a party. The first paragraph of Section 1825 provides:

> In any case wherein the United States or an officer or agency thereof, is a party, the United States marshal for the district shall pay all fees of witnesses on the certificate of the United States Attorney or Assistant United States Attorney, and in the proceedings before a United States Commissioner, on the certificate of such commissioner.

We conclude that the district court has authority under Section 1825, where the government is a party and has tried its case, and particularly in light of the compelling facts found in this case, to order the United States District Attorney to provide a certificate to authorize payment of witness fees for its opponent.

The plain language of Section 1825 confirms its applicability to civil cases in which the United States is a party as well as to criminal cases. On this point we disagree with Sixth Circuit, which characterized Section 1825 as the "criminal law counterpart" to 28 U.S.C. § 1915(c). *Johnson v. Hubbard, supra,* 698 F.2d at 290. The terms "officer or agency" belie the Sixth Circuit's constructive interpretation; since officers or agencies of the United States lack legal authority to prosecute criminal cases, the inclusion of such language in Section 1825 signifies its applicability to civil cases.[4]

While Section 1825 confers power upon the United States Attorney rather than upon the district court to certify government payment of witness fees, nothing in the statute prevents the district court from exercising its discretion to order the United States Attorney to do so. The predecessor of Section 1825 specifically empowered the district court to certify such payment directly.[5] Those provisions were reworded as the current version of Section 1825 pursuant to one of the many recommendations of

---

**4.** We also disagree with the broad statement of the district court in *Hudson v. Ingalls Shipbuilding Division, Litton Systems, Inc.,* 516 F.Supp. 708, 709 (S.D.Ala.1981), that 28 U.S.C. § 1825 provides government payment for an indigent civil litigant's witnesses only in habeas corpus actions and actions under 28 U.S.C. § 2255. The *Hudson* court apparently based its statement solely upon the second paragraph of Section 1825, ignoring the plain language of the first paragraph pertaining to actions in which the United States is a party. *Hudson* is inapplicable here because it did not involve the United States as a party.

**5.** 28 U.S.C. § 608 (1928) provided:

> In cases where the United States are parties, the marshal shall, on the order of the court, to be entered on its minutes, pay to the jurors and witnesses all fees to which they appear by such order to be entitled, which sum shall be allowed him at the Treasury in his accounts.

Section 608 was repealed in 1948, Act of June 25, 1948, ch. 646, § 39, 62 Stat. 992, and replaced by Section 1825.

the Judicial Conference Committee on Revision of the Judicial Code. Historical and Revision Notes, 28 U.S.C. § 1825 (1976) (prior version of Section 1825 "unnecessary and inappropriate"). We do not interpret the rewording of Section 1825 as a negation of the district court's discretionary power to order payment, however indirectly, of witness fees in cases where the United States is a party.

Here the United States has brought an action against an indigent party. Through payment of Yellow Thunder Camp's pretrial witness expenses, the government has enabled the trial to proceed. It has presented its case in full, bringing the testimony of lay witnesses as well as experts from the U.S. Forest Service and experts in the religious history of the Lakota Nation. Midtrial, it has refused continued payment for Yellow Thunder Camp's trial witnesses, without whom Yellow Thunder Camp cannot mount a defense. The district court set forth the "bald facts" to justify its order:

1. The defendants have no money.

2. The defendants have no money to pay their own expenses (for food, lodging and travel) or those of their attorneys and witnesses.

3. The defendants have no money to bring any witnesses to the trial.

4. The Government has brought and is bringing a number of experts to testify.

5. The defendants have no money to pay even the expenses of friendly expert witnesses.

6. Without money, there will be no witnesses.

7. Without witnesses, there will be no defense.

8. Without a defense, the Government must prevail.

9. Without money, a motion to dismiss for non-prosecution will have to be sustained.

The defendants have given the Marshals sixteen subpoenas. The Court has told the defendants that they will have to satisfy the Court that each witness is essential. The Court is at least as cognizant of the inappropriateness of misusing the public purse as anyone involved in this cause and will carefully oversee any expenditure of funds.

The Court has carefully considered the brief of the Marshal's Service and is not persuaded that any of the cited cases cover the situation set out in the "bald facts" above.

The simple question is: Should the Government deny a 'use permit' in the National Forest and only be subject to judicial review if those denied have money to fight?

This Court does not think so.

These facts found by the district court compellingly demonstrate that the parties brought into the court by the United States cannot have an opportunity to obtain justice through a fair trial unless they are allowed to present their defense. To do so they must have witnesses. It would be an appropriate exercise of the district court's discretion under Section 1825 to order the United States Attorney to certify payment of Yellow Thunder Camp's witnesses. *Adkins v. E.I. DuPont de Nemours & Co.,* 335 U.S. 331, 337, 69 S.Ct. 85, 88, 93 L.Ed. 43 (1948) (there are "few more appropriate occasions for use of a court's discretion than one in which a litigant [asks] that the public pay costs of his litigation ...."). Should the United States Attorney fail to comply with such an order, the district court may consider imposing sanctions under Fed.R. Civ.P. 41(b), including involuntary dismissal.

Our interpretation of Section 1825 as permitting such discretionary action stems not only from the plain language of the statute and its legislative history but also from longstanding notions of fairness in interactions between citizens and the government. In *Rock Island A.L. & R. Co. v. United States,* 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed.2d 188 (1920), Justice Holmes declared that "men must turn square corners when they deal with the Government." The occupants of Yellow Thunder Camp have turned such square corners in dealing with the government, applying for the proper use permit and pursuing appropriate channels

of appeal. Likewise, as Justice Douglas pointed out: "[T]he government in moving against citizens should also turn square corners." *Commissioner of Internal Revenue v. Lester,* 366 U.S. 299, 306, 81 S.Ct. 1343, 1348, 6 L.Ed.2d 306 (1961) (Douglas, J., dissenting); *see also Meister Bros., Inc. v. Macy,* 674 F.2d 1174 (7th Cir.1982); *Automobile Club of Michigan v. Commissioner of Internal Revenue,* 230 F.2d 585 (6th Cir. 1956); *California State Board of Equalization v. Coast Radio Products,* 228 F.2d 520 (9th Cir.1955). Thus, in bringing an action against the Yellow Thunder Camp members, and having presented its own side of the case, the United States must turn square corners and permit the defendants to present their side of the case.

## IV.

■ Alternatively, with respect to appellees' expert witnesses the district court on remand may simply require the government to advance their fees and expenses, which may later be taxed as costs. Under 28 U.S.C. § 2412(d)(1)(A) & (2)(A) (Supp. V 1981), the district court may award costs for expert witnesses to a party prevailing against the United States in a civil action unless the court finds that the government was substantially justified or that special circumstances make an award unjust. The court itself may appoint expert witnesses either of its own choosing or upon nomination by the parties under Fed.R.Evid. 706. Rule 706(b) further provides that in civil actions "the compensation shall be paid by the parties in such proportion and at such time as the court directs, and thereafter charged in like manner as other costs."

■ This court may set aside a district court's taxation of costs only upon finding an abuse of discretion. *See Farmer v. Arabian American Oil Co.,* 379 U.S. 227, 235, 85 S.Ct. 411, 416, 13 L.Ed.2d 248 (1964); Fed.R. Civ.P. 54(d). In *Estep v. United States,* 251 F.2d 579, 582 (5th Cir.1958), the court held that while no statute or rule authorizes a

district court's discretion as to the issuance of subpoenas on behalf of an indigent party in civil proceedings, such power exists because a "district court ha[s] either implied or inherent power and discretion to prevent abuse of its process." Likewise, we believe it is within a court's discretion to order advance payment of fees to ensure the attendance of expert witnesses and the progress of the trial:

No doubt in the usual case the judge will provide that the expense of the experts shall be taxed as costs and paid by the loser. He may require the parties to contribute proportionate shares of the fees in advance. He may think it wise to excuse an impecunious party from paying his proportionate shares.

Model Code of Evidence, Rule 410, Comment (1947) (basis of current Fed.R.Evid. 706); *see also Cagle v. Cox,* 87 F.R.D. 467, 471 (E.D.Va.1980) (court has discretion to tax expert witness fees as costs to assure indigents same access to courts and appropriate remedies as nonindigents); *Maldonado v. Parasole,* 66 F.R.D. 388, 390 (E.D.N.Y. 1975) (indigency proper ground for allocating costs where economic disparity between parties is wide).

In the circumstances of the present case, the district court would be well within its discretion to order the government to advance fees and disbursements for Yellow Thunder Camp's expert witnesses, such expenses ultimately to be taxed as costs against the non-prevailing party.[6] Appellees have been found to be impecunious and can justifiably be excused from advancing witness payments that might later be taxed against the government. The trial is already well under way, the court has carefully screened appellees' requests for witnesses to keep such costs at a minimum, the case has been moved to Rapid City, South Dakota, to further minimize witness expenses, and the court has found the witnesses to be essential for a complete and fair trial. As District Judge Biunno, in deter-

---

**6.** Since the purpose of the advance contribution of witness fees is not to secure costs or damages, but rather to ensure attendance of a party's witnesses, requiring the government to do so would not violate 28 U.S.C. § 2408 (1976).

mining expert witness fees to be chargeable to the government, observed:

> All who come before the court are equal in the eyes of the law. The United States, as plaintiff, has no special or different status than any other party. In fact, in its role as plaintiff, it carries the burden of persuasion .... It will be expected to adhere to and comply with the court's orders for payment of compensation to the expert witness as they are issued from time to time.

*United States v. R.J. Reynolds Tobacco Co.,* 416 F.Supp. 313, 316 (D.N.J.1976); *see also United States v. State of California,* 655 F.2d 914, 919 (9th Cir.1980) (federal government, like any plaintiff, must meet all elements of cause of action—the bitter as well as the sweet); *United States v. City of Philadelphia,* 644 F.2d 187, 206 (3d Cir.1980) (federal government held to same pleading requirements demanded of private litigant). Likewise, the United States, as plaintiff in the present case, must abide by an order of the district court to advance expert witness expenses which later will be charged as costs. We remand this case to the district court to formulate an order for payment of witness fees and expenses consistent with this opinion.

## V.

The parties have raised a particularly troublesome constitutional issue. Yellow Thunder Camp has forcefully argued that meaningful, adequate and effective access to the courts is mandated by the Constitution under *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), and that such access necessarily requires payment of witness fees for indigents in civil as well as criminal cases. The government has countered by arguing that appellees' due process interest is of insufficient weight to warrant government payment of witness fees because the underlying question concerns rights to land and is therefore a property interest, not a liberty interest. Appellees' claims, however, concern religious and ceremonial interests which merit protection un-

der the first amendment and the due process clause. *See Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed.2d 1042 (1923).

Because we conclude that the district court possesses authority by statute or rule to effectuate government payment or advancement of Yellow Thunder Camp's witness fees through reformulation of its order on remand, we need not pass upon the parties' strenuous arguments regarding due process. · As the Supreme Court stated in *Califano v. Yamasaki, supra,* 442 U.S. 682, 692–693, 99 S.Ct. 2545, 2553, 61 L.Ed.2d 176 (1979):

> A court presented with both statutory and constitutional grounds to support the relief requested usually should pass on the statutory claim before considering the constitutional question. (citations omitted) Due respect for the coordinate branches of government, as well as a reluctance when conscious of fallibility to speak with our utmost finality ... counsel against unnecessary constitutional adjudication. And if "a construction of the statute is fairly possible by which [a serious doubt of constitutionality] may be avoided," ... a court should adopt that construction. In particular, this Court has been willing to assume a congressional solicitude for fair procedure, absent explicit statutory language to the contrary.

We remand to the district court for further proceedings consistent with this opinion.