UNITED STATES of America, Appellee,

v.

**COLLINS SPENCER CATCH THE BEAR, Appellant.**

No. 83–1526.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 13, 1983.

Decided Feb. 14, 1984.

Philip N. Hogen, U.S. Atty., D.S.D., Reed Rasmussen, Asst. U.S. Atty., Rapid City, S.D., Lee Schoenbeck, Legal Intern., for appellee.

James D. Leach, Rapid City, S.D., for Collins Spencer Catch The Bear.

Before LAY, Chief Judge, and HEANEY and ARNOLD, Circuit Judges.

HEANEY, Circuit Judge.

Collins Spencer Catch The Bear appeals from the district court's [1] denial of his motion to reduce his sentence pursuant to Fed. R.Crim.P. 35 and his subsequent motion for reconsideration and oral argument. Catch The Bear pled guilty to escaping from a halfway house and was sentenced to the maximum term, five years. *See* 18 U.S.C. §§ 751(a), 4082(d) (1982). He essentially argues his sentence should be reduced because it is excessive given the mitigating circumstances of his case. He also contends the district court considered materially false information in deciding upon the sentence. He requests either reversal and re-

---

1. The Honorable Andrew W. Bogue, United States District Court for the District of South Dakota.

mand for resentencing or remand for an evidentiary hearing. We affirm.

## BACKGROUND

At the time he was living at the halfway house, Catch The Bear was serving a sentence under the Federal Youth Corrections Act, 18 U.S.C. § 5010(b) (1982), for larceny of property worth over $100 on an Indian reservation, 18 U.S.C. §§ 1153, 661 (1982). He was originally incarcerated at the Federal Correctional Institution at Englewood, Colorado. After approximately eight months at that institution, on June 4, 1982, he was transferred to Friendship House, Inc., a community treatment center located in Rapid City, South Dakota. Catch The Bear claims he encountered a hostile staff member when he arrived at the Friendship House and found employment extremely difficult to obtain. A week after his arrival, he signed out of the Friendship House and failed to return.

According to Catch The Bear, he went from the Friendship House to an Indian encampment called the Yellow Thunder Camp, located twelve miles from Rapid City. The presentence report described Yellow Thunder Camp as "an extremely controversial encampment consisting of a loosely organized group of people of several different races who are attempting to claim 800 acres of land located in the Black Hills National Forest, which they state rightfully belongs to the American Indian for religious purposes and under the terms and conditions outlined in the Fort Laramie Treaty of 1868." The continued existence of the Yellow Thunder Camp has become the subject of a legal battle between the United States, which claims the occupation of National Forest land is illegal, and camp members, who seek a special use permit to establish a religious, cultural and educational community. *United States Marshals Service v. Means,* 724 F.2d 642, 643–44 (8th Cir. 1983) (interlocutory appeal from district court's order directing the United States Marshal Service to pay costs and fees for camp witnesses).

While Catch The Bear was living at the Yellow Thunder Camp, Clarence Tollefson was shot to death inside the camp boundaries. Affidavits and portions of depositions submitted by Catch The Bear in support of his Rule 35 motion indicate that the police arrested James Jones, the "Chief of Security" at the camp, as their main suspect in the shooting. Jones subsequently obtained immunity from prosecution for murder, escape, and firearms violations, and all other offenses he committed in the county where the Yellow Thunder Camp is located in exchange for his testimony that Catch The Bear shot Tollefson. Relying on Jones' account of the shooting, state authorities indicted Catch The Bear for first degree murder. A South Dakota state court dismissed this charge during the prosecution's opening statement. According to Catch The Bear, FBI gunshot residue analyses done the day of the shooting were positive for Jones and two other suspects, in direct contradiction with Jones' version of the shooting.

Catch The Bear pled guilty to escape from the Friendship House on November 1, 1982, while the state murder charge was still pending. After considering the presentence report, the district court sentenced Catch The Bear to five years imprisonment, the maximum sentence, on December 6, 1982. When the murder charge was dismissed, Catch The Bear moved the district court for a reduction of his sentence and for a hearing on March 31, 1983. In the order denying the motion, dated April 11, 1983, the district court stated it had not considered the pending murder charge in sentencing Catch The Bear for escape. The district court further noted that Catch The Bear had two previous felony convictions and had associated with known felons while at the Yellow Thunder Camp. Catch The Bear filed a motion for reconsideration and oral argument on April 13, 1983. The district court denied these motions and Catch The Bear appealed to this Court.

## DISCUSSION

The trial court has discretion in sentencing and sentences within the statutory maximum are not generally reviewable by the court of appeals. *United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972); *United States v. Bangert,* 645 F.2d 1297, 1306 (8th Cir.), *cert.*

*denied,* 454 U.S. 860, 102 S.Ct. 314, 70 L.Ed.2d 158 (1981). Catch The Bear argues, however, that his case falls into the small category of reviewable cases where the sentence imposed is "greatly excessive under traditional concepts of justice or manifestly disproportionate to the crime or the criminal." *Woosley v. United States,* 478 F.2d 139, 147 (8th Cir.1973), and cases cited therein.

We consider Catch The Bear's sentence a long one in the circumstances of this case. A number of mitigating factors favor a sentence below the statutory maximum. Catch The Bear's personal history is filled with foster homes and struggles with alcoholism. He was only nineteen years old when he walked away from the Friendship House, which is not the most egregious form of escape from federal custody. Furthermore, sentencing data in the presentence report indicates that Catch The Bear's sentence for escape is three times greater than the national average for that crime. For the 317 defendants in the nation convicted of escape between July 1, 1980, and June 30, 1981, the average sentence was twenty months. For the two defendants convicted of escape in South Dakota between October 1, 1981, and September 30, 1982, the average prison sentence was twenty-one months.[2] Given Catch The Bear's background and the nature of his offense, a sixty-month sentence appears harsh.

■ We cannot say, however, that this sentence is an abuse of discretion. The sentencing court may consider aggravating as well as mitigating factors in setting a sentence. *See Williams v. Oklahoma,* 358 U.S. 576, 585, 79 S.Ct. 421, 426, 3 L.Ed.2d 516 (1959); *United States v. Lopez-Gonzales,* 688 F.2d 1275, 1277 (9th Cir.1982). Catch The Bear's prior felony convictions support the district court's exercise of discretion in favor of the maximum penalty. Thus, while we may have weighed the factors differently and decided upon a lighter sentence, the term imposed is not "greatly excessive" or "manifestly disproportionate to the crime or criminal."

■ Catch The Bear's contention that his sentence was based on false information presents a separate issue. Sentences based upon material misinformation or erroneous assumptions violate due process. *Townsend v. Burke,* 334 U.S. 736, 740, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948); *United States v. Tobias,* 662 F.2d 381, 388 (5th Cir.), *cert. denied,* 457 U.S. 1108, 102 S.Ct. 2908, 73 L.Ed.2d 1317 (1982). Factual matters considered must have some minimal indicium of reliability beyond mere allegation, *United States v. Baylin,* 696 F.2d 1030, 1040 (3d Cir.1982); and a defendant must be given an opportunity to rebut contested factual information relied on by the sentencing court. *United States v. Papajohn,* 701 F.2d 760, 763 (8th Cir.1983).

■ Catch The Bear contests the district court's reliance on information that he had two prior felony convictions. Apparently, imposition of sentence on one of his prior convictions was suspended after he observed the conditions of his probation. Thus, he does not contend the prior conviction does not exist or was unconstitutional, but rather that the district court should not have considered it because of the disposition. This contention is without merit in view of the broad inquiry sentencing judges may conduct in making a sentencing decision. *See United States v. Tucker, supra,* 404 U.S. at 446, 92 S.Ct. at 591.

Neither does it appear from the record that the district court erroneously assumed Catch The Bear associated with at least one known felon at the Yellow Thunder Camp. In documents Catch The Bear submitted to the court in support of his motion to reduce his sentence, there is evidence that Jones knew Catch The Bear and they were together at the murder scene the day of the murder. Moreover, in response to the sentencing court's denial of his Rule 35 motion, Catch The Bear did not deny associating with Jones or that he knew Jones was a

---

**2.** These statistics do not indicate what percentage of people received the maximum term and their backgrounds. Thus, while inclusion of this data in presentence reports is certainly helpful to the sentencing judge, *Woosley v. United States,* 478 F.2d 139, 147 n. 7 (8th Cir. 1973), it does not demonstrate that Catch The Bear's sentence was disproportionate.

felon. He did deny knowing that the other man the district court identified as his associate was a felon. Nevertheless, the district court denied his motion for reconsideration. Thus, it appears both that Catch The Bear had an opportunity to rebut the information relied on by the district court in setting his sentence and that the information was not materially false. *See United States v. Papajohn, supra,* 701 F.2d at 763–764.

■ Finally, the district court's failure to grant an evidentiary hearing on Catch The Bear's motion was not an abuse of discretion. The trial court may select the appropriate procedure for rebutting sentencing information. "[T]he exercise of discretion in this regard will not be overturned in the absence of plain error or the abuse of that discretion." *Orner v. United States,* 578 F.2d 1276, 1279 (8th Cir.1978). Since Catch The Bear alleges no facts that were not previously considered by the district court or that are in need of evidentiary support, the failure to order an evidentiary hearing was not an abuse of discretion.