John Wayne McGEE, Sr., Plaintiff,

v.

Reeves W. RANKIN, Ron Fields, David P.
Saxon, Deborah J. Groom, Bill Cau-
thron and Bill Fentress, Defendants,

United States Marshals Service,
Intervenor,

Arkansas Department of Correction,
Intervenor.

Civ. No. 83-2128.

United States District Court,
W.D. Arkansas,
Fort Smith Division.

April 18, 1984.

John Wayne McGee, Sr., pro se.

Ronald Fields, Pros. Atty., Sebastian County, Fort Smith, Ark., for defendants.

Steve Clark, Atty. Gen. and A. Carter Hardage, Asst. Atty. Gen., Little Rock, Ark., for intervenor, Arkansas Dept. of Correction.

Lawrence E. Fischer, Deputy Gen. Counsel, U.S. Marshals Service, McLean, Va., and Steven N. Snyder, Asst. U.S. Atty., Fort Smith, Ark., for intervenor, U.S. Marshals Service.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

In this 42 U.S.C. § 1983 action, money damages are sought for alleged violations of the plaintiff's civil rights occurring while he was incarcerated in the Sebastian County Detention Center, Fort Smith, Arkansas. On December 15, 1983, the United States Magistrate for the Western District of Arkansas ordered the Clerk of this court to issue writs of habeas corpus ad prosequendum and ad testificandum in relation to a scheduled hearing January 26, 1984, in Fort Smith, Arkansas.

At this time the only issue to be determined by this court is whether to place the obligation to transport the subjects of the writs of habeas corpus on the Arkansas Department of Correction or on the United States Marshals Service.

Congress has expressly authorized the federal courts to issue three types of common-law habeas corpus writs: ad subjiciendum (the Great Writ), ad prosequendum ("you have the body to be prosecuted"), and ad testificandum ("you have the body to testify"). 28 U.S.C. § 2241(a)(c)(5). This statute, in addition to the All Writs Act, 28 U.S.C. § 1651(a), gives federal courts authority to issue writs of habeas corpus to compel the attendance of prisoner witnesses. Furthermore, 28 U.S.C. § 2243 prescribes that the writ "shall be directed to the person having custody of the person detained" and that "the person to whom the writ is directed shall be required to produce at the hearing the body of the person detained." Combined, these statutes clothe the court with authority to issue writs of habeas corpus and direct the court to issue those writs to the custodian of the person requested to testify.

In addition to the provisions listed above, several statutes which directly pertain to relationship between the U.S. Marshals Service and writs of habeas corpus issued by federal courts should be addressed and considered in relation to the issue to be decided herein.

The first and most applicable statute is 28 U.S.C. § 569(a) and (b), which reads:

(a) The United States marshal of each district is the marshal of the district court and of the court of appeals when sitting in his district, and of the Court of International Trade holding sessions in his district elsewhere than in the Southern and Eastern Districts of New York, and may, in the discretion of the respective courts, be required to attend any session of court.

(b) United States marshals shall execute all lawful writs, process and orders issued under authority of the United States, including those of the courts and Government of the Canal Zone, and command all necessary assistance to execute their duties.

Clearly, section (a) merely recites that the federal court may require the marshal to attend any session of the court. Section (b) does not require the Marshals Service to perform every lawful writ issued by a federal court. This provision ensures that the writs issued by the court will be enforced and it is applicable when the custodian to whom the writ is issued refuses to comply with the terms of the writ. Section 569(b) is an enforcement provision for federal judicial process.

28 U.S.C. § 567(2) allows for the payment of the expenses of the Marshals Service arising from the transportation of prisoners. However, section 567(2) does not authorize the Marshals Service to pay the expenses of a custodian required by a writ to transfer a prisoner to federal court. Thus, it cannot be inferred from this statute that the Marshals Service has an obligation to perform all of the writs issued by the federal court.

These statutes have been similarly interpreted by the Third Circuit Court of Appeals in *Story v. Robinson*, 689 F.2d 1176 (3 Cir.1982). That court also noted that, while these statutes may be collaterally relevant to the issue at hand, they certainly are not determinative.

The Third Circuit in *Story v. Robinson, supra,* addressed this issue under similar facts and affirmed an order issued by a district court requiring the state to transport prisoners sought under a writ of habeas corpus, who were incarcerated in the state prison, to the county jail nearest the federal courthouse. From the county jail, the Marshals Service took custody of the prisoners and returned them there after their presence was no longer required in court. Thus, the responsibility of transporting and guarding over prisoners whose testimony was required in court was divided between the state which had custody over the prisoners and the Marshals Service which had a somewhat closer relation to federal actions than the state.

The Seventh Circuit Court of Appeals in *Ford v. Carballo*, 577 F.2d 404 (7 Cir.1978), in considering whether the state of Wisconsin should be reimbursed for its expenses in transporting and supervising the attendance of a state prisoner at a federal proceeding, stated that "a federal court may impose duties upon third parties only when they do not present unreasonable burdens." 577 F.2d at 408, *citing United States v. New York Telephone Co.,* 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977). The court concluded that, in light of the fact that the state's only relationship to the proceeding was its custody over the prisoners, requiring the state to produce the prisoner at its own expense resulted in an unreasonable burden on the state. Accordingly, the lower court was reversed and it was directed that the state be reimbursed for its expenses.

The unreasonable burden limitation which the Seventh Circuit gleaned from the factually unrelated case of *United States v. New York Telephone, supra,* was not adopted by the Third Circuit. In fact, the Third Circuit did not mention *Ford.* Furthermore, the court concluded that *New York Telephone* did not support the Commonwealth's assertion that they were entitled to be reimbursed for cost of complying with the writ because that case was inapplicable. Together, *Ford* and *New York Telephone* portray the definite split of opinion among the circuits.

The Eighth Circuit Court of Appeals has not addressed this particular issue, but in *United States Marshals Service v. Means*, 724 F.2d 642 (8 Cir.1983), the court considered a related issue concerning the expenditure of federal funds for fees and expenses of witnesses subpoenaed by indigent civil litigants. The facts in *Means* significantly differ from the situation involved in this case and, therefore, *Means* provides only minimal guidance at best. In *Means,* the government brought a civil action against several Sioux Indians living in the Yellow Thunder Camp, claiming that the Indians illegally occupied the land. The district court ordered the United States Marshals Service to serve the subpoenas and pay for minimum fees and costs for certain witnesses necessary to the defense. Affirming the district court, the Court of Appeals for the Eighth Circuit stated that

"the district court has authority under Section 1825, where the government is a party and has tried its case, and particularly in light of the compelling facts found in this case, to order the United States District Attorney to provide a certificate to authorize payment of witness fees for its opponent."

At best, *Means* can only be read to require that fees for witnesses necessary to

an indigent's defense against an action brought by the United States be paid by the United States Marshals Service. This ruling was necessary under FED.R.EVID. 706 in order to require the attendance of the witnesses. The court clearly limited *Means* to its own facts. In keeping with that limitation, this court finds *Means* inapplicable to the facts involved in the case at bar.

There being no controlling authority directing a decision, the court is free to weigh all the considerations and make the most prudent determination.

The Arkansas Department of Correction is the custodian of the prisoners whose presence is ordered under the writs of habeas corpus in question. 28 U.S.C. § 2243 prescribes that the writ "shall be directed to the person having custody of the person detained" and that "the person to whom the writ is directed shall be required to produce at the hearing the body of the person detained." The Arkansas Department of Correction is "the person having custody of the person detained" and is required to produce that person. The obligation to produce the prisoner is not satisfied by delivering the prisoner to the nearest county jail as the Third Circuit has directed. Under the clear and unambiguous language of the statute, the custodian must produce the prisoner at the hearing in question.

The obligation to comply with the writ of habeas corpus is not absolute. As the Supreme Court noted in *New York Telephone,* "The power of federal courts is not without limits; unreasonable burdens may not be imposed." This limitation was extended by the Seventh Circuit in *Ford* to a fact situation similar to the one at bar. This court also finds that the clear language of the Supreme Court opinion in *New York Telephone* requires that the limitation apply to this fact situation. However, the reasonableness of the burden should be judged in light of all the surrounding circumstances. In this case, considering the fact that the Arkansas Department of Correction is the custodian of the

prisoners and in light of the fact that the underlying section 1983 action resulted from an occurrence in a county jail in Arkansas, the Department of Correction being the custodian is more substantially connected with the litigation than the Marshals Service which is only related to the litigation by its federal status. Furthermore, the custodian is a public entity intimately involved with public service and the administration of justice; whereas, in *New York Telephone* the writ was directed to a private commercial party. Although the New York Telephone Company was a public utility company, that is, it provided a service to the general public, it was in no way directly associated with the administration of justice. In light of these distinguishing characteristics, this court holds that a public agency, such as the Arkansas Department of Correction, to be excused from the obligations imposed on it by a writ of habeas corpus must show that it is required by the writ to bear an extremely unreasonable burden.

 This court specifically holds that the obligation to produce prisoners who are the subjects of writs of habeas corpus is to be borne by the custodian of those prisoners and may be excused only by showing that the writ imposes an unreasonable burden upon the obligated third party. Additionally, the court holds that when, as in this case, the custodial third party is a public entity interested in the administration of justice, the burden of showing that the writ creates an unreasonable imposition is extremely high and requires a showing of substantial unreasonableness. Furthermore, the obligation created by the writ requires delivery at the hearing and is not satisfied by mere delivery to the nearest county jail.

 A collateral issue that should be addressed concerns ARK.STAT.ANN. § 46–181, which reads as follows:

When an inmate in the care and custody of the Arkansas Department of Correction is required to be present during a legal proceeding of any court in this State, it shall be the duty of the sheriff

of the county in which the proceeding will take place to take custody of the inmate at the institution where the inmate is confined, and to then transport the inmate to the appropriate county and make him available to the court. The Sheriff shall, at the conclusion of the proceeding, transport the inmate back to the Unit of the Arkansas Department of Correction from which the inmate was received, and shall return custody of the inmate to the Arkansas Department of Correction officials. The Sheriff's office shall be responsible for the custody until the time custody of the inmate is returned to the Department of Correction; and the county in which the legal proceeding is held shall be responsible for all expenses relating to the transportation and care of the inmate ....

Essentially, this statute assigns any obligation imposed upon the Arkansas Department of Correction to produce prisoners at a legal proceeding to the sheriff in the county where the proceeding will take place. While this may create a hardship on the county, that hardship directly results not from the issuance of the writ, but from the legislative assignment of the obligation. Although this court recognizes the financial imposition this may impose upon sheriffs' offices, that imposition is one to be resolved by the State of Arkansas and not by this court.

The order accompanying this opinion is a final order within 28 U.S.C. § 1291, since it fully resolves the dispute between the United States Marshals Service and the Arkansas Department of Correction.