741 F.2d 1053
 39 Fed.R.Serv.2d 1366, 16 Fed. R. Evid. Serv. 209
 UNITED STATES MARSHALS SERVICE, Appellant,
v.
William A. MEANS, Mathew King, a/k/a Noble Redman, and all
other persons occupying the location called
"Yellow Thunder Camp at Victoria Lake in
the Black Hills National
Forest," Appellees.
 No. 82-2489.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 30, 1984.
Decided Aug. 14, 1984.
 
 Larry B. Leventhal, Minneapolis, Minn., Bruce Ellison, Roger Finzel, Rapid City, S.D., for appellees.
 Russell Means, pro se.
 Anthony C. Liotta, Deputy Asst. Atty. Gen., Phillip N. Hogan, U.S. Atty., Reed Rasmussen, Asst. U.S. Atty., Rapid City, S.D., Peter R. Steenland, Jr., Nancy B. Firestone, Attys., Dept. of Justice, Washington, D.C., for appellant; Lawrence E. Fischer, Deputy General Counsel, U.S. Marshals Service, McLean, Va., of counsel.
 Before LAY, Chief Judge, HEANEY, BRIGHT, ROSS, McMILLIAN, ARNOLD, JOHN R. GIBSON, FAGG and BOWMAN, Circuit Judges, en banc.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 We must decide whether the United States may be compelled to expend federal funds for fees and expenses of witnesses subpoenaed by indigent civil litigants in cases where the United States is a party. The United States brought an action against some forty individuals living in the Yellow Thunder Camp, claiming that they were illegally occupying land in the Black Hills National Forest. After the government presented its case at trial, the United States Marshals Service refused to subpoena the Yellow Thunder witnesses and to pay their fees and expenses. The district court ordered the Marshals Service to do so. The Marshals Service appealed from that order, arguing that neither 28 U.S.C. Sec. 1915 (1982) nor the due process clause authorized the service. After the decision by a panel of this Court approving payment of the fees, see United States Marshals Service v. Means, 724 F.2d 642 (8th Cir.1983), we granted rehearing en banc on the motion of the Marshals Service. We now conclude that the district court may order government advancement of such fees and expenses, and we therefore remand this case to the district court to enter its order in accordance with this opinion.
 
 
 2
 The underlying controversy in the ongoing trial, now recessed pending the outcome of this appeal, concerns the existence of the Yellow Thunder Camp, a small, largely American Indian community, situated in the Black Hills National Forest. On April 22, 1981, application was submitted on behalf of Yellow Thunder Camp members and the Lakota Nation for a special use permit allowing them to establish a religious, cultural, and educational community in an 800-acre area of the Black Hills National Forest. The United States Forest Service denied the request on August 24, 1981, and ordered those within the Yellow Thunder Camp to leave the site by September 8, 1981. A timely administrative appeal was taken.
 
 
 3
 The United States filed an action against the principals of the Yellow Thunder Camp on September 9, 1981, seeking to eject them from allegedly illegally occupied lands. On September 15 the Yellow Thunder Camp principals brought a separate action against the United States Forest Service, claiming authority to remain there and further claiming that Forest Service officials had wrongfully denied them a use permit. The procedural history is further described in our panel opinion. 724 F.2d at 643-44.
 
 
 4
 After commencement of the actions, the Marshals Service served subpoenas upon and paid fees and costs for pretrial witnesses called by the Yellow Thunder Camp principals on four occasions. It declined to do so with respect to their trial witnesses, however, claiming that it lacked statutory authority. On November 23, 1982, the district court, citing 28 U.S.C. Sec. 1915 and due process considerations, denied the motion of the Marshals Service to quash the subpoenas and ordered it to serve process and pay all fees and costs of the Yellow Thunder witnesses. The government concluded the presentation of its case, including testimony offered by lay and expert witnesses, and the district court then recessed the trial pending the outcome of this appeal.
 
 
 5
 We adhere to our panel opinion ruling that we have jurisdiction of this appeal under the collateral order doctrine. 724 F.2d at 644-45. Furthermore, the government has conceded before the en banc Court that the Marshals Service is required by law to subpoena the Yellow Thunder witnesses; it could not do less. The authority of the district court to order the United States Marshals Service to pay fees and expenses for the Yellow Thunder witnesses is the sole issue we must decide. We will begin by examining 28 U.S.C. Sec. 1915 and other statutes and rules because "[a] court presented with both statutory and constitutional grounds to support the relief requested usually should pass on the statutory claim before considering the constitutional question." Califano v. Yamasaki, 42 U.S. 682, 692, 99 S.Ct. 2545, 2553, 61 L.Ed.2d 176 (1979).
 
 I.
 
 6
 In determining whether 28 U.S.C. Sec. 1915 authorizes a district court to order government payment of an indigent's witness fees and expenses, the starting point for our analysis must be the plain language of the statute itself. See Kosak v. United States, --- U.S. ----, ----, 104 S.Ct. 1519, 1523, 79 L.Ed.2d 860 (1984); United States v. Weber Aircraft Corp., --- U.S. ----, ----, 104 S.Ct. 1488, 1492, 79 L.Ed.2d 814 (1984). If it is unambiguous, the language is ordinarily to be regarded as conclusive in the absence of a clearly expressed legislative intent to the contrary. Dickerson v. New Banner Institute, Inc., 460 U.S. 103, 110, 103 S.Ct. 986, 990, 74 L.Ed.2d 845 (1983). Section 1915 provides in part:
 
 
 7
 (a) Any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a person who makes affidavit that he is unable to pay such costs or give security therefor....
 
 
 8
 ....
 
 
 9
 (c) The officers of the court shall issue and serve all process, and perform all duties in such cases. Witnesses shall attend as in other cases, and the same remedies shall be available as are provided for by law in other cases.
 
 
 10
 While the plain language of section 1915 expressly provides for service of process for an indigent's witnesses, it nowhere mentions payment of fees and expenses for such witnesses. Moreover, the legislative history of section 1915 does not address this subject. H.R.Rep. No. 308, 80th Cong., 1st Sess. A161 (1947), reprinted in 1B Reams & Haworth, Congress and the Courts: A Legislative History 1787-1977, at 1485. We cannot, in the absence of any clear statement to the contrary, infer congressional intent to have section 1915 cover witness fees and expenses.
 
 
 11
 The structure of section 1915 further fortifies the implication of its plain language that it does not authorize government payment of witness fees and expenses for indigent litigants. Congress enacted section 1915 as a whole in 1948, subsequently making only minor amendments. It is therefore appropriate to interpret section 1915 as a whole. Subsection (b) specifically provides for government payment of expenses for printing the record on appeal or preparing a transcript of proceedings. Subsection (d) specifically provides for the appointment of counsel where a litigant is unable to employ an attorney. In contrast to subsections (b) and (d), subsection (c) makes no provision for witness fees or expenses, stating only that "[w]itnesses shall attend as in other cases...." Indeed, what subsection (c) does specifically provide the indigent litigant is stated clearly in the first sentence: "The officers of the court shall issue and serve all process, and perform all duties in such cases."
 
 
 12
 Generally speaking, a legislative affirmative description implies denial of the non-described powers. Continental Casualty Co. v. United States, 314 U.S. 527, 533, 62 S.Ct. 393, 396, 86 L.Ed. 426 (1942); see also Andrus v. Glover Constr. Co., 446 U.S. 608, 616-17, 100 S.Ct. 1905, 1910-11, 64 L.Ed.2d 548 (1980) (where statute specifically enumerates certain exceptions, additional exceptions are not to be implied, absent a contrary legislative intent). Furthermore, where Congress uses particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress has acted intentionally and purposefully in the disparate inclusion or exclusion. Russello v. United States, --- U.S. ----, ----, 104 S.Ct. 296, 299, 78 L.Ed.2d 17 (1983). We are convinced that the specific government funding provisions in section 1915 preclude this Court from inferring an additional and significant provision for witness fees and expenses.
 
 
 13
 We observed in our panel opinion that the district court relied on Morrow v. Igleburger, 584 F.2d 767, 772 n. 7 (6th Cir.1978), cert. denied, 439 U.S. 1118, 99 S.Ct. 1027, 59 L.Ed.2d 78 (1979), in determining that section 1915 covers witness fees, but that the Sixth Circuit later abandoned the Morrow footnote as dicta, Johnson v. Hubbard, 698 F.2d 286, 290 n. 4 (6th Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 282, 78 L.Ed.2d 260 (1983). Johnson specifically held that section 1915(c) does not require government payment of witness fees and costs for an indigent inmate of a state mental hospital in his action under 42 U.S.C. Sec. 1983. While we do not completely adopt the rationale of the Sixth Circuit, we agree with its result.[1] We also agree with the Sixth Circuit's reliance upon United States v. MacCollom, 426 U.S. 317, 321, 96 S.Ct. 2086, 2089, 48 L.Ed.2d 666 (1976), in which the Supreme Court declared that "the expenditure of public funds [on behalf of an indigent litigant] is proper only when authorized by Congress" and with its observation that courts that have found such congressional authorization in section 1915 have done so without thorough consideration of the issues. Johnson, 698 F.2d at 290 n. 4 (citing White v. Sullivan, 368 F.Supp. 292, 293 (S.D.Ala.1973) (without explanation, court mentions government payment of witness fees and expenses for indigent civil party pursuant to section 1915(c))). The plain language, statutory context and legislative history of 28 U.S.C. Sec. 1915 convince us that the statute neither expressly nor implicitly authorizes the payment of the witness fees and expenses as ordered by the district court.
 
 II.
 
 14
 While section 1915 does not authorize the district court's order, we conclude upon careful analysis that Federal Rules of Evidence 614(a) and 706(b), read in light of 28 U.S.C. Secs. 1920 and 2412 (1982), and Federal Rule of Civil Procedure 54(d), confer upon the district court discretionary power to call Yellow Thunder Camp's lay and expert witnesses as the court's own witnesses and to order the government as a party to this case to advance their fees and expenses, such advance payment to be later taxed as costs.
 
 
 15
 Federal Rule of Civil Procedure 54(d) gives a district court considerable discretionary power to impose costs: "[C]osts shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the United States, its officers, and agencies shall be imposed only to the extent permitted by law." Congress has provided for taxation of costs in civil cases brought by or against the United States in 28 U.S.C. Sec. 2412(a):
 
 
 16
 [C]osts, as enumerated in section 1920 of this title, ... may be awarded to the prevailing party in any civil action brought by or against the United States or any agency and any official of the United States acting in his or her official capacity in any court having jurisdiction of such action.
 
 
 17
 In turn, costs that may be taxed in civil cases in which the United States is a party are enumerated in 28 U.S.C. Sec. 1920 and include expenses for lay and expert witnesses:
 
 
 18
 (3) Fees and disbursements for printing and witnesses;
 
 
 19
 ... [and]
 
 
 20
 (6) Compensation of court appointed experts....
 
 
 21
 28 U.S.C. Sec. 1920(3) & (6).[2] Generally, a district court's taxation of costs may be set aside only upon a finding of abuse of discretion. See Farmer v. Arabian American Oil Co., 379 U.S. 227, 235, 85 S.Ct. 411, 416, 13 L.Ed.2d 248 (1964).
 
 
 22
 Compensation for court-appointed experts in civil actions such as this "shall be paid by the parties in such proportion and at such time as the court directs, and thereafter charged in like manner as other costs." Fed.R.Evid. 706(b) (emphasis added). The plain language of Rule 706(b) thus permits a district court to order one party or both to advance fees and expenses for experts that it appoints. Commentary on this provision makes this interpretation abundantly clear:
 
 
 23
 No doubt in the usual case the judge will provide that the expense of the experts shall be taxed as costs and paid by the loser. He may require the parties to contribute proportionate shares of the fee in advance. He may think it wise to excuse an impecunious party from paying his proportionate share.
 
 
 24
 Model Code of Evidence, Rule 410, Comment (1947) (basis of current Fed.R.Evid. 706); see also Cagle v. Cox, 87 F.R.D. 467, 471 (E.D.Va.1980) (court has discretion to tax expert witness fees as costs to assure indigents same access to courts as nonindigents); Maldonado v. Parasole, 66 F.R.D. 388, 390 (E.D.N.Y.1975) (indigency proper ground for apportioning costs where large economic disparity between parties).
 
 
 25
 Furthermore, we believe that a court may order parties to advance payment of fees and expenses for lay witnesses called by the court under Federal Rule of Evidence 614(a). Rule 614(a) simply codifies a judge's well-established common law authority to call witnesses. Fed.R.Evid. 614, Notes of Advisory Committee on Proposed Rules, Subdivision (a). It provides that "[t]he court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called." The government suggests that fees and expenses of witnesses called by the court must be paid from the court's own funds.
 
 
 26
 Such financial constraints upon a court's power to call witnesses and ensure their appearance at trial would vitiate the primary purpose of Rule 614(a), which is to assure that "the judge is not imprisoned within the case as made by the parties." Id.; Westwood Chemical Co. v. Kulick, 656 F.2d 1224, 1231 (6th Cir.1981); United States v. Karnes, 531 F.2d 214, 216 (4th Cir.1976). The court's power to call witnesses is crucial to prevent impairment of the fact-finding process. United States v. Leslie, 542 F.2d 285, 289 (5th Cir.1976). Thus, to allow the court to call witnesses without providing some mechanism for payment of their fees and expenses would be meaningless.
 
 
 27
 We recognize that Rule 614(a) does not specifically address the subject of expenses and costs, while Rule 706(b) does. The expenses required by the production and testimony of expert witnesses greatly exceed those required for lay witnesses; this may explain the specific reference to costs in Rule 706(b). Nevertheless, we believe that these rules are closely related and that the procedure set forth in Rule 706(b) may, in the discretion of the district court, be applied to the calling of lay witnesses under Rule 614(a). Both Rules 614 and 706 allow the district court to call its own witnesses; both place great discretion in the district court. The discretionary power of courts to award expert witness fees as costs was discussed at length by the Third Circuit in Roberts v. S.S. Kyriakoula D. Lemos, 651 F.2d 201, 203-207 (3d Cir.1981). Relying upon Welsch v. Likins, 68 F.R.D. 589, 597 (D.Minn.1975), aff'd per curiam, 525 F.2d 987 (8th Cir.1975), the court stressed the appropriateness of awarding fees where the expert's testimony is indispensable to the determination of the case. Where lay witnesses are indispensable, it is equally appropriate that there be a way to ensure that they be produced. We think it reasonable to conclude that the expense mechanism under Rule 706(b), which is essentially an equitable procedure, is likewise available to effectuate Rule 614(a).
 
 
 28
 We thus conclude that a district court has the discretion to charge as costs the fees and expenses of the witnesses it calls, and if advance payment is necessary to secure the witnesses, to have the parties advance such payment in whatever proportions are fair. Therefore, where the United States brings an action and its opposition lacks funds to present indispensable defense testimony, the government plaintiff may, under the limited circumstances presented in this case, be required by the district court to advance expenses for these witnesses subject to a final award of costs to the prevailing party at the conclusion of the litigation.
 
 
 29
 In holding that the district court may order the United States, as a party, to advance the fees and expenses of lay and expert witnesses called by the court,[3] such fees and expenses later to be taxed as costs, we strongly emphasize that this discretionary power is to be exercised only under compelling circumstances. The "bald facts" of the present case, as we enumerated them in the panel opinion, 724 F.2d at 647, illustrate such compelling circumstances. Here the United States brought suit against members of the Yellow Thunder Camp. The Yellow Thunder Camp members are indigent, and the government paid for the fees and expenses of their pretrial witnesses on four occasions. Yet, after fully presenting its case, the government midtrial refused to pay for the Yellow Thunder Camp's trial witnesses, and in so doing sought victory by default. The district court as finder of fact deemed such witnesses to be absolutely essential to the progress of a fair trial and to the interests of justice. In addition, the court carefully screened Yellow Thunder's requests for witnesses and transferred the trial to Rapid City, South Dakota, to keep costs at a minimum. After setting forth these "bald facts," the district court concluded in its order that
 
 
 30
 [t]he simple question is: Should the Government deny a 'use permit' in the National Forest and only be subject to judicial review if those denied have money to fight?
 
 
 31
 This Court does not think so.
 
 
 32
 We further emphasize that whatever party eventually prevails is irrelevant to the court's discretionary action ordering and apportioning advance payment of witness costs. In affirming the district court's issuance of a civil indigent's subpoenas, the court in Estep v. United States, 251 F.2d 579, 582 (5th Cir.1958), observed that "a district court ha[s] either implied or inherent power and discretion to prevent abuse of its process." We believe that longstanding notions of fairness in interactions between citizens and the government make the exercise of discretion especially appropriate in the present case because the United States is the party responsible for hampering the progress of the ongoing trial. In Rock Island, A. & L.R. Co. v. United States, 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920), quoted in Heckler v. Community Health Services, --- U.S. ----, ----, 104 S.Ct. 2218, 2225, 81 L.Ed.2d 42 (1984), Justice Holmes declared that "men must turn square corners when they deal with the Government." The Yellow Thunder Camp has done so, applying for the proper use permit and pursuing appropriate channels of appeal. Likewise, as Justice Douglas pointed out: "[T]he government in moving against citizens should also turn square corners." Commissioner v. Lester, 366 U.S. 299, 306, 81 S.Ct. 1343, 1347, 6 L.Ed.2d 306 (1961) (Douglas, J., dissenting); see also Meister Bros., Inc. v. Macy, 674 F.2d 1174 (7th Cir.1982); Automobile Club of Michigan v. Commissioner, 230 F.2d 585 (6th Cir.1956), aff'd, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957); California State Bd. of Equalization v. Coast Radio Products, 28 F.2d 520 (9th Cir.1955). Thus, in bringing an action against the Yellow Thunder Camp members, and having presented lay and expert testimony in concluding its own side of the case, the United States must turn square corners and permit them to present their side of the case. As the court observed in United States v. R.J. Reynolds Tobacco Co., 416 F.Supp. 313, 316 (D.N.J.1976), in holding that the United States must comply with orders for payment of compensation of an expert witness, "All who come before the court are equal in the eyes of the law. The United States, as plaintiff, has no special or different status than any other party."
 
 III.
 
 33
 Because we conclude that the issue before us is adequately addressed by statutes and rules, we need not address the parties' due process arguments. See United States Marshals Service v. Means, 724 F.2d at 649. The Supreme Court has advised against "unnecessary constitutional adjudication" and declared that "if 'a construction of the statute is fairly possible by which [a serious doubt of constitutionality] may be avoided,' ... a court should adopt that construction." Califano v. Yamasaki, 442 U.S. at 693, 99 S.Ct. at 2553.
 
 
 34
 We remand to the district court for further proceedings consistent with this opinion.
 
 
 35
 JOHN R. GIBSON, Circuit Judge, with whom BRIGHT, Circuit Judge, joins, concurring separately on additional grounds.
 
 
 36
 I adhere to the view expressed in the panel opinion that 28 U.S.C. Sec. 1825 (1982) provides statutory authority for the district court to order government payment of the Yellow Thunder witness fees under the circumstances posed in this case. In the first paragraph of section 1825, Congress explicitly provides for payment of witness fees by the United States Marshals Service in cases where the United States is a party:
 
 
 37
 In any case wherein the United States or an officer or agency thereof, is a party, the United States marshal for the district shall pay all fees of witnesses on the certificate of the United States Attorney or Assistant United States Attorney, and in the proceedings before a United States Commissioner, on the certificate of such commissioner.
 
 
 38
 I believe the statute means what its language plainly states. The district court may compel government payment of witness fees in cases where the United States is a party by ordering the United States Attorney as an officer of the court to certify such payment.
 
 
 39
 The starting point for statutory analysis, as this Court observed in analyzing section 1915, must be the plain language of the statute itself. Kosak v. United States, --- U.S. at ----, 104 S.Ct. at 1523; United States v. Weber Aircraft, --- U.S. at ----, 104 S.Ct. at 1492. Furthermore, if it is unambiguous, the language is ordinarily to be regarded as conclusive in the absence of a clearly expressed legislative intent to the contrary. Dickerson v. New Banner Institute, Inc., 460 U.S. at 110, 103 S.Ct. at 990.
 
 
 40
 The plain language of section 1825 belies the Sixth Circuit's narrow characterization of it in Johnson v. Hubbard, 698 F.2d at 290, as the "criminal law counterpart" to 28 U.S.C. Sec. 1915(c). Inclusion of the terms "officer or agency" in the first paragraph of section 1825 demonstrates its applicability to civil cases; officers or agencies of the United States do not prosecute criminal cases. The United States is the party prosecuting a criminal case and the district attorney as an "officer" acts only as counsel for the United States.
 
 
 41
 The plain language of the first paragraph also indicates that it applies to the Yellow Thunder witnesses since it encompasses "all fees of witnesses" "in any case wherein the United States is a party." The government contends that we should construe the first paragraph as if it read "all fees of witnesses who appear on behalf of the government," but it can adduce no authority to support its alchemistic construction. Rather, it draws our attention to the other two paragraphs of section 1825:
 
 
 42
 In all proceedings, in forma pauperis, for a writ of habeas corpus or in proceedings under section 2255 of this title, the United States marshal for the district shall pay all fees of witnesses for the party authorized to proceed in forma pauperis, on the certificate of the district judge.
 
 
 43
 Fees and mileage need not be tendered to the witness upon service of a subpena [sic] issued in behalf of the United States or an officer or agency thereof, or upon service of a subpena [sic] issued on behalf of a party, authorized to proceed in forma pauperis, where the payment thereof is to be made by the United States marshal as authorized in this section.
 
 
 44
 Essentially the government argues that since the United States is "an interested party" to state habeas corpus decisions and a real party to sentence challenges under 28 U.S.C. Sec. 2255, then the second paragraph of section 1825, which concerns indigents in such actions, would be redundant if the first paragraph were to be ascribed its plain meaning. The argument is unpersuasive. The second paragraph was enacted nearly twenty years after the first paragraph for the express purpose of making certain that there was legislative authority for obtaining witnesses in habeas corpus or section 2255 proceedings. The two paragraphs deal with entirely different subjects. The first paragraph by its very language encompasses actions in which the United States is a party. It concerns but is not confined to cases involving indigents; and it does not address cases in which the government is not a party even though they may involve indigents. By contrast, the second paragraph is aimed specifically at indigents and specifically at habeas corpus and section 2255 cases.* Since the first paragraph does not cover state habeas corpus cases, the United States not being a real party, the second is certainly not redundant in this regard. Furthermore, although it can be said that the first paragraph would cover section 2255 actions, this slight redundancy is no more than congressional emphasis on the desirability of aiding indigent prisoners in federal as well as state habeas corpus cases. This is a far more plausible explanation than the conclusion that the first paragraph of section 1825 does not have the plain meaning that it expresses.
 
 
 45
 The government also contends that because the third paragraph contains the phrasing "Fees and mileage need not be tendered to the witness upon service of a subpena [sic] issued in behalf of the United States ... or ... on behalf of a party, authorized to proceed in forma pauperis," the first and second paragraphs must be construed to parallel the phrasing. Thus, the government concludes, the first paragraph must apply only where the witness appears on behalf of the United States. The government's argument once again stresses form over substance; simply because the third paragraph includes the reference to witnesses who appear on behalf of the United States does not require this Court to read these words into the first paragraph. Indeed, there is at least an equally strong argument that since Congress included the phrasing "in behalf of the United States" in the third paragraph but not in the first, it did so intentionally. Russello v. United States, --- U.S. at ----, 104 S.Ct. at 299.
 
 
 46
 The legislative history is inconclusive. The first paragraph of section 1825 is based upon 28 U.S.C. Secs. 600c and 608. Section 600c did contain the phrase "witnesses on behalf of the United States." Act of December 24, 1942, ch. 825, Pub.L. No. 845, 56 Stat. 1088. Section 608, however, did not. Act of October 13, 1941, ch. 431, Pub.L. No. 267, 55 Stat. 736; 28 U.S.C. Sec. 608 (1928). Nor did Congress include such language when it enacted section 1825. Act of June 25, 1948, ch. 646, Pub.L. No. 773, 62 Stat. 951 (current version of first paragraph). The legislative history of the 1948 Act, which included the first paragraph of section 1825, did not discuss section 1825 specifically except to note that numerous administrative changes were made.** H.R.Rep. No. 308, 80th Cong., 1st Sess. A155 (1947), reprinted in 1B Reams & Haworth, Congress and the Courts: A Legislative History, 1787-1977, at 1479; Final Report of Committee on Codification and Revision of the Judicial Code (1948). Later, when Congress set out to amend section 1825 by adding the second paragraph, it did so because Fed.R.Crim.P. 17(b), which concerns indigent criminal defendants, did not cover indigents in habeas corpus and section 2255 proceedings. Thus, the legislative history of the second paragraph contains no explicit reference to the first paragraph of section 1825. S.Rep. No. 615, 89th Cong., 1st Sess., reprinted in 1965 U.S.Code Cong. & Ad.News 2901. To derive from such inconclusive legislative history a clearly expressed legislative intent that section 1825 means other than what it clearly states requires an interpretation that I find repugnant.
 
 
 47
 Thus, I would conclude that section 1825 means precisely what it says and that it authorizes government payment of witness fees in cases where the United States is a party. Hence it would authorize a district court to order the United States Attorney to certify payment for the Yellow Thunder witnesses. Because such discretionary power carries a potential for abuse, it must certainly be used only under compelling circumstances such as those "bald facts" before the district case in the present case.
 
 
 48
 LAY, Chief Judge, with whom HEANEY, Circuit Judge, joins, concurring and dissenting.
 
 
 49
 I join in the majority's holding that Rules 614(a) and 706(b) authorize the payment of fees and expenses in this case. However, I must respectfully dissent from that portion of the majority's opinion which interprets Sec. 1915 as not authorizing prepayment by the United States of witness fees and costs of indigents.
 
 
 50
 It is uncontested that Sec. 1915(a) authorizes the waiver of the prepayment of fees and costs for the initiation of a lawsuit by an indigent. It also is conceded that subsection (c) requires the marshal to "serve all process" in such a case without prepayment of fees. Implicit in these provisions is the authorization of prepayment by the government of witness fees. Without this final step, the commencement of a lawsuit and the service of process are futile gestures.
 
 
 51
 It is evident that Congress intended in Sec. 1915 to provide indigents with an opportunity, equal to that of a solvent party, to prosecute or defend a lawsuit in federal court. This goal is realized only if the indigent is afforded some way to compel the attendance of witnesses. Providing service of process is an empty promise if witness fees are not also provided. We should not "impute to Congress a purpose to paralyze with one hand what it sought to promote with the other." Clark v. Uebersee Finanz-Korp., 332 U.S. 480, 489, 68 S.Ct. 174, 178, 92 L.Ed. 88 (1947).
 
 
 52
 The majority finds that the list in subsection (b) of costs which the United States must pay is exclusive. However, that enumeration of payments relates only to the appellate process; such payments would not be implicit in the authorization, found in subsection (a), of the commencement of a lawsuit by an indigent. Thus, the enumeration in subsection (b) should not be read to exclude authorization for the United States to prepay basic costs of a lawsuit such as witness fees.
 
 
 53
 The majority contends that there is no authorization for expenditure of funds by the government in Sec. 1915. However, it does find authorization for such funds in Rules 614 and 706. I see no language in Rule 614 that provides a clearer authorization for government prepayment of witness fees than I find in Sec. 1915. On the contrary, Sec. 1915 comes closer to an explicit authorization of funds than does Rule 614. In Sec. 1915, the prepayment and waiver of fees are specifically discussed; no mention of compensation is made in Rule 614.
 
 
 54
 In order to give practical effect to the provisions of Sec. 1915, I would find that the section authorizes the prepayment of witness fees and costs by the United States. Only by this method can Congress's intent to provide indigents with effective access to the courts be carried out.
 
 
 55
 McMILLIAN, Circuit Judge, concurring in part and dissenting in part.
 
 
 56
 For the reasons discussed below, I concur in part and dissent in part. As a preliminary matter, I agree that we have jurisdiction of this appeal under the collateral order doctrine. Cf. United States v. Sacco, 430 F.2d 1304, 1305 (2d Cir.1970) (per curiam) (district court order authorizing expenditure of government funds for transcript of minutes of indigent defendant's conspiracy trial held appealable under collateral order doctrine). I also agree that the Marshals Service cannot refuse to serve the subpoenas for the Yellow Thunder Camp litigants, as was conceded by counsel for the Marshals Service during oral argument en banc. See 28 U.S.C. Sec. 1915(c) ("The officers of the court shall issue and serve all process, and perform all duties in such cases."). However, the Yellow Thunder Camp litigants do not have the financial resources to pay the witness attendance fee and travel expenses for their subpoenaed witnesses. Unless the Marshals Service can be compelled to advance the necessary witness attendance fees and travel expenses or unless the fees and expenses need not be tendered with the subpoenas to the witnesses, service of the subpoenas alone will not significantly assist the Yellow Thunder Camp litigants in presenting their case.
 
 
 57
 The district court found that the sixteen witnesses identified by the Yellow Thunder Camp litigants were all necessary to the presentation of their case and ordered the Marshals Service to serve the subpoenas and pay the fees and expenses of the Yellow Thunder Camp witnesses.[1] It is undisputed that the Yellow Thunder Camp litigants have no money to pay the witness fees and expenses. This approach appears analogous to that set forth in Fed.R.Crim.P. 17(b) for indigent criminal defendants. E.g., United States v. Wyman, 724 F.2d 684, 686 (8th Cir.1984). However, the Yellow Thunder Camp litigants are not indigent criminal defendants. The consolidated cases in the district court are civil proceedings: in No. CIV-81-5131 the United States filed an action against the Yellow Thunder Camp litigants, claiming that they illegally occupied part of the Black Hills National Forest and seeking injunctive and declaratory relief, and in No. CIV-81-5135 the Yellow Thunder Camp litigants filed an action against the United States Forest Service, claiming authority to occupy the Black Hills and alleging the Forest Service erroneously denied their application for a special use permit.
 
 
 58
 I fully agree that considerations of fairness and the interests of justice would support requiring the United States to pay the fees and expenses of witnesses for indigent civil litigants, particularly in cases like the present one in which the party proceeding in forma pauperis is the defendant in an action brought by the United States or in civil rights cases, especially those involving incarcerated prisoners, see, e.g., Johnson v. Hubbard, 698 F.2d 286, 291 (6th Cir.) (Swygert, J., dissenting) (constitutional right of access to the courts), cert. denied, --- U.S. ----, 104 S.Ct. 282, 78 L.Ed.2d 260 (1983). However, I am unable to find the express waiver of sovereign immunity necessary to order the affirmative expenditure of funds by the United States in 28 U.S.C. Sec. 1915(c) or in 28 U.S.C. Sec. 1825. For this reason, I concur in Part I of the majority opinion.
 
 
 59
 First, I agree that the in forma pauperis statute, 28 U.S.C. Sec. 1915, in particular subsection (c), does not authorize the United States to pay the fees and expenses of witnesses subpoenaed for parties authorized to proceed in forma pauperis. See Johnson v. Hubbard, 698 F.2d at 289-90 (state prisoner civil rights action); Andrews v. Atkins, 100 F.R.D. 762, 764 (D.Kan.1984) (pro se prisoner action); Hudson v. Ingalls Shipbuilding Division, 516 F.Supp. 708, 709 (S.D.Ala.1981) (Title VII action). But see Moss v. ITT Continental Baking Co., 83 F.R.D. 624, 626 (E.D.Va.1979) (Title VII action) (differentiating between witness disbursements and litigation expenses); Marks v. Calendine, 80 F.R.D. 24, 27 (N.D.W.Va.1978) (state prisoner civil rights action), aff'd sub nom. Flint v. Haynes, 651 F.2d 970 (4th Cir.1981), cert. denied, 454 U.S. 1151, 102 S.Ct. 1018, 71 L.Ed.2d 306 (1982); Ball v. Woods, 402 F.Supp. 803, 810 (N.D.Ala.1975) (state prisoner civil rights action), aff'd without published opinion sub nom. Ball v. Shamblin, 529 F.2d 520 (5th Cir.), cert. denied, 426 U.S. 940, 96 S.Ct. 2660, 49 L.Ed.2d 393 (1976); White v. Sullivan, 368 F.Supp. 292, 293 (S.D.Ala.1973) (state prisoner civil rights claim; no discussion). Section 1915(c) provides in part that "[w]itnesses shall attend as in other cases." It does not authorize the government to pay or advance the fees and expenses for witnesses, unlike the specific provision in Sec. 1915(b) for payment by the United States of the expenses of printing the record on appeal, preparing the transcript of proceedings before a magistrate or printing the record on appeal in the case of proceedings before a magistrate under 28 U.S.C. Sec. 636(c).
 
 
 60
 Nor do I agree that 28 U.S.C. Sec. 1825 authorizes the district court to order the United States to pay the witness fees and expenses for indigent civil litigants in proceedings other than for writs of habeas corpus or under 28 U.S.C. Sec. 2255. See Hudson v. Ingalls Shipbuilding Division, 516 F.Supp. at 709; Dortly v. Bailey, 431 F.Supp. 247, 248 (M.D.Fla.1977) (indigent habeas corpus petitions). The language in the first paragraph is very broad and would appear to authorize the marshal to pay the fees and expenses of witnesses, even for the other party, in any case in which the United States or an officer or agency thereof is a party, upon the certificate of the United States attorney. I agree with the concurring opinion that 28 U.S.C. Sec. 1825 applies in civil cases as well as criminal cases and, therefore, disagree with the Sixth Circuit's characterization of this part of Sec. 1825 as the "criminal law counterpart" of Sec. 1915(c) in Johnson v. Hubbard, 698 F.2d at 290. However, when Sec. 1825 is read as a whole, especially the third paragraph, it is clear that the first paragraph only authorizes the marshal to pay the fees of witnesses for the United States. The second paragraph authorizes the marshal to pay the fees of witnesses for parties authorized to proceed in forma pauperis in proceedings for writs of habeas corpus or under 28 U.S.C. Sec. 2255. The third paragraph specifically authorizes the marshal to serve subpoenas issued on behalf of the United States or on behalf of a party proceeding in forma pauperis for a writ of habeas corpus or under 28 U.S.C. Sec. 2255 without tendering to the witness the attendance fee and travel expenses. See generally S.Rep. No. 615, 89th Cong., 1st Sess., reprinted in 1965 U.S.Code Cong. & Ad.News 2901.
 
 
 61
 Finally, I agree that the district court could call the witnesses designated by the Yellow Thunder Camp litigants as its own witnesses pursuant to Fed.R.Evid. 614(a), appoint those who qualified as expert witnesses pursuant to Fed.R.Evid. 706(b), and order the government as a party to advance the witnesses' fees and expenses, subject later to taxation as costs against the nonprevailing party[2] pursuant to 28 U.S.C. Sec. 2412(a) (Supp. V 1981). Congress enacted the Federal Rules of Evidence by the Act of Jan. 2, 1975, Pub.L. No. 93-595, 88 Stat. 1926 (codified in 28 U.S.C. Federal Rules of Evidence). I cannot join Part II of the majority opinion because at this time the district court has neither called the Yellow Thunder Camp witnesses as its own witnesses nor appointed them as expert witnesses. At this time the district court has determined only that the Yellow Thunder Camp litigants are indigent and that they cannot present their case without these witnesses. In these circumstances in this civil case the district court cannot order the government to pay the fees and expenses of the Yellow Thunder Camp witnesses. Accordingly, I respectfully dissent from Part II.
 
 
 62
 As noted in the majority opinion, Fed.R.Evid. 614(a) provides only that the district court may call witnesses on its own motion or at the suggestion of a party. There is no reference to payment of witness fees and expenses by the government. I agree that this rule enabling the district court to call its own witnesses would be virtually meaningless unless there was some method of payment of the witnesses' fees and expenses. Without advance government funding of witness fees and expenses for its own witnesses, the district court would face financial restraints similar to those facing the Yellow Thunder Camp. Nonetheless, it does not appear from the record that the district court has in fact called these witnesses itself. For this reason, I believe that our consideration of this question is premature.
 
 
 63
 With respect to the appointment by the district court of expert witnesses, the rule itself provides that only expert witnesses who consent to act as such shall be appointed. Fed.R.Evid. 706(a). The expert witness' consent would eliminate the need to subpoena any expert witness so appointed and the necessity of tendering the attendance fee and travel expenses with the subpoena. In addition, the rule expressly provides that the district court may award expert witnesses so appointed "reasonable compensation in whatever sum the court may allow," payable in non-condemnation civil actions by the parties "in such proportions and at such time as the court directs, and thereafter charged in like manner as other costs." Id. 706(b). Thus, following the appointment of expert witnesses, the district court could order the government as a party to pay in advance part or all of the appointed expert witnesses' compensation, subject later to taxation as costs. Cf. United States v. R.J. Reynolds Tobacco Co., 416 F.Supp. 313, 316 (D.N.J.1976) (United States as a party expected to comply with orders for payment of compensation to expert witness appointed by court pursuant to Fed.R.Evid. 706). Here, the district court has not determined whether any of the witnesses would be qualified as expert witnesses or, if qualified, whether they would consent to so act, or appointed any expert witnesses. Had the district court appointed any expert witnesses pursuant to Fed.R.Evid. 706 and then ordered the United States as a party to pay some amount as advance compensation, subject later to taxation as costs, and the United States refused to do so, I would agree that such refusal could be the basis for an appropriate sanction, perhaps dismissal of the complaint. Id. However, that is not the situation presented here.
 
 
 64
 Accordingly, I would not reach the question of the district court's authority to order the expenditure of government funds under either Fed.R.Evid. 614(a) or 706(b).
 
 
 
 [1]
 Unlike the Sixth Circuit, we do not view Congress's failure to amend section 1915 at the time it enacted 28 U.S.C. Sec. 1825 (1982), which provides, inter alia, for government payment of witness fees for parties proceeding in forma pauperis in certain cases, to be dispositive. As we observed in the panel opinion, 724 F.2d at 645 n. 3, the Supreme Court has warned that the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one. Russello, --- U.S. at ----, 104 S.Ct. at 302. We prefer to rely upon the text and history of section 1915 itself
 
 
 [2]
 We take exception to the Sixth Circuit's dicta in Johnson v. Hubbard, 698 F.2d at 291 n. 5, that section 1920(3) encompasses only expert testimony. Although the court cited Moss v. ITT Continental Baking Co., 83 F.R.D. 624 (E.D.Va.1979), and 6 J. Moore, Federal Practice p 54.77[5-3], at 1735 (2d ed. 1982), upon examination of these authorities we disagree. Indeed, if Congress had intended to so limit section 1920(3), it would have been superfluous for it to enact section 1920(6), which pertains to fees for court-appointed experts
 
 
 [3]
 Since the purpose of the advancement of witness fees is not to secure costs or damages, but rather to ensure attendance of the court's witnesses, requiring the government to do so would not violate 28 U.S.C. Sec. 2408 (1982)
 
 
 *
 The district court in Hudson v. Ingalls Shipbuilding Division, Litton Systems, Inc., 516 F.Supp. 708, 709 (S.D.Ala.1981), stated broadly that section 1825 provides for government payment of an indigent civil litigant's witnesses only in habeas corpus and section 2255 actions. The court apparently based its statement solely upon the second paragraph of section 1825, which does refer specifically to indigents. Its failure to mention the first paragraph's provision of government payment of witness fees in cases where the United States is a party is understandable since Hudson did not involve the United States as a party
 
 
 **
 The 1928 version of section 608 specifically authorized the district court to certify directly witness fees in cases where the United States was a party. The Historical and Revision Notes to section 1825 indicate that the court order provisions of both sections 600c and 608 were omitted as "unnecessary and inappropriate." Thus, the shifting of responsibility from the court to the United States Attorney appears to be no more than an act of administrative convenience. It does not negate the court's power to oversee the United States Attorney's discretion and to order him or her to certify witnesses' fees under section 1825 when necessary
 
 
 [1]
 The estimated total cost for the per diem, attendance fee and travel expenses for the Yellow Thunder Camp witnesses was in excess of $5,000
 
 
 [2]
 See, e.g., Flint v. Haynes, 651 F.2d 970, 972-73 (4th Cir.1981) (district court may award costs against litigant proceeding in forma pauperis; prisoner civil rights action), cert. denied, 454 U.S. 1151, 102 S.Ct. 1018, 71 L.Ed.2d 306 (1982); Cagle v. Cox, 87 F.R.D. 467, 468, 472 (E.D.Va.1980) (prisoner civil rights action; denied motion for government funds for expert witnesses; granted motion for retention of expert witnesses and taxation of fees and expenses as costs in the event that plaintiffs prevailed); Moss v. ITT Continental Baking Co., 83 F.R.D. 624, 625-27 (E.D.Va.1979) (no reimbursement of indigent civil plaintiff's counsel's litigation expenses; notes that witness disbursements may be taxed as costs); Maldonado v. Parasole, 66 F.R.D. 388, 392 (E.D.N.Y.1975) (taxing costs against nonprevailing party; both parties were indigent)