Dennis R. COOKISH,
Plaintiff, Appellant,

v.

Michael CUNNINGHAM, Warden, New
Hampshire State Prison,
Defendant, Appellee.

No. 85–1666.

United States Court of Appeals,
First Circuit.

Submitted Dec. 5, 1985.

Decided March 20, 1986.

Dennis R. Cookish on brief, pro se.

Ronald F. Rodgers, Sr. Asst. Atty. Gen., Stephen E. Merrill, Atty. Gen., Concord, N.H., on brief for defendant, appellee.

Before BOWNES, BREYER and TOR-RUELLA, Circuit Judges.

PER CURIAM.

Inmate Dennis Cookish filed this action in the district court of New Hampshire, charging that he had been denied proper medical care by state authorities, and had been denied access to a law library. Later, he amended his complaint, and alleged that the law library at the New Hampshire State Prison was constitutionally inadequate. The district court reviewed the complaint, and concluded that it could withstand a motion to dismiss under Fed.R. Civ.P. 12(b)(6). Cookish requested that counsel be appointed for him; that request was denied. The district court issued a pre-trial order, set a discovery schedule, and set the matter for trial. Cookish requested that the trial court subpoena close to two dozen witnesses; his request was granted in part and denied in part.

The matter was tried before a magistrate; both parties thereafter submitted post-trial briefs. In addition, Cookish, with the court's permission, submitted into evidence affidavits from fellow inmates. The court concluded that the evidence did not support Cookish' contention that his constitutional rights had been violated. On appeal Cookish challenged this conclusion; in addition, he argued that the district court abused its discretion by denying his request for appointed counsel, and by re-fusing to subpoena all of the witnesses he had requested. Cookish also argued that it was error for the court not to rule on issues raised in the pleadings but not argued at trial, and that the court erroneously admitted certain hearsay statements. We find none of appellant's arguments persuasive, and therefore affirm the judgment of the district court.

*Denial of Request for Counsel.*

The law is well established that there is no constitutional right to appointment of counsel in a civil case. *Andrews v. Bechtel Power Corporation and Local 276, Plumbers and Pipefitters Union,* 780 F.2d 124, 137 (1st Cir.1985). Section 1915(d) of Title 28, however, gives the district court the discretion to appoint counsel to an indigent litigant in appropriate circumstances.[1] We review only to determine whether the district court abused its discretion. *See, e.g., Childs v. Duckworth,* 705 F.2d 915, 923 (7th Cir.1983). *Cf. Andrews, supra,* p. 137 (abuse of discretion standard applied in reviewing denial of counsel in Title VII case).

■ A number of courts have concluded, and we agree, that an indigent litigant must demonstrate exceptional circumstances in his or her case to justify the appointment of counsel. *E.g., Whisenant v. Yuam,* 739 F.2d 160, 163 (4th Cir.1984); *Slavin v. Curry,* 690 F.2d 446, 448 (5th Cir.1982); *United States ex rel. Gardner v. Madden,* 352 F.2d 792, 794 (9th Cir.1965). *See also Childs v. Duckworth,* 705 F.2d 915, 922 (7th Cir.1983) (no right to appointment of counsel unless the denial of proper representation would result in fundamental unfairness impinging on due process rights). Whether exceptional circumstances exist requires an evaluation of the type and complexity of each case, and the abilities of the individual bringing it. *Branch v. Cole,* 686 F.2d 264, 266 (5th Cir.1982). That the plaintiff has alleged sufficient facts to state a claim in the complaint does

---

1. "The court may request an attorney to represent any such person unable to employ counsel ..." 28 U.S.C. § 1915(d).

not in and of itself require the appointment of counsel. *Childs v. Duckworth, supra; Maclin v. Freake,* 650 F.2d 885, 887 (7th Cir.1981) ("Once the merits of the claim are considered and the district court determines the claim is colorable, appointment of counsel may or may not be called for, depending on a variety of other factors.") Nor would the fact that a complaint will likely result in a trial, without other significant factors, require the appointment of counsel. *See, e.g., Slavin v. Curry,* 690 F.2d at 448 (counsel not required even though case resulted in a six day jury trial); *Cook v. Bounds,* 518 F.2d 779, 780 (4th Cir.1975). Some factors which courts have found to bear on the question of exceptional circumstances in a particular case include the indigent's ability to conduct whatever factual investigation is necessary to support his or her claim, *Peterson v. Nadler,* 452 F.2d 754, 758 (8th Cir.1971); the complexity of the factual and legal issues involved, *Childs v. Duckworth, supra,* at 922; and the capability of the indigent litigant to present the case. *Maclin v. Freake, supra,* at 888.

█ Applying those factors to the case at bar, we find no abuse of discretion. The case involved three basic claims: (1) inadequate dental care; (2) denial of access to a law library; and (3) inadequacy of the law library.

The facts relating to each claim were relatively straight-forward and, to a great extent, undisputed. With respect to his claim of inadequate dental care, appellant testified, and the court found, that appellant first complained of a toothache on April 4 or 5, 1984. He was given Orajel for pain, and an appointment with the prison dentist was scheduled for April 10, 1984. At the appointment, a dental intern informed the appellant that he could treat the tooth only by pulling it.[2] Appellant declined the treatment in the hopes that he would be released on bail and could seek private treatment. Within a few days, however, the pain became unbearable, and appellant requested that the tooth be pulled. An appointment was immediately scheduled, and the tooth extracted on April 13, 1984. The only dispute centered on the frequency of appellant's complaints of pain between April 5 and April 10: appellant testified that he complained frequently; prison records recorded only two complaints of pain. The prison nurse had no recollection of whether or not appellant had complained of a toothache.

Similarly, there was little dispute concerning the restrictions placed on appellant's access to the prison law library. When he arrived at the prison, appellant was confined at the Special Housing Unit (SHU) for approximately a two-week quarantine period. During the initial quarantine period, it was general practice to deny prisoners access to the law library except on an emergency basis.[3] Although appellant requested access to the library on numerous occasions, access was denied because prison authorities, after contacting the court in which appellant's case was pending, concluded that no emergency existed. When the quarantine period ended, appellant was permitted to use the prison library facilities; access was restricted once again, however, after appellant pled guilty to a charge of stealing law library books.

Finally, there was virtually no dispute as to the contents of the prison law library. In pleadings and in an affidavit appellant suggested that numerous books were missing; at trial, however, the state explained that those books were kept in a separate, locked closet because they presented a high risk of theft. Lists of the contents of the library and the satellite library were admitted as exhibits.

---

2. At the trial, it appeared that appellant was also challenging the standard of treatment he ultimately received. He waived this issue in his post trial brief, however, and confined his complaint to the propriety of the delay in administering treatment.

3. The trial court found that there was a small satellite library for prisoners confined to the SHU. It was undisputed, however, that this library was set up after appellant's quarantine period ended. This error does not affect our analysis of the case.

None of the claims involved presented difficult or complex factual issues, or investigative difficulties for the appellant. He was given access to his prison request slips, and was able to examine and catalog the contents of the law library. In addition, he introduced testimony from other inmates concerning their problems in conducting legal research and obtaining prompt medical care. To a great extent, he relied on his own testimony. As we noted earlier, there was little dispute about what the facts were; the dispute centered on whether, given those facts, appellant was entitled to relief.

The legal analysis required to answer this question was as straight-forward as the facts underlying the claim. Appellant needed to demonstrate "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs" to state a cognizable claim concerning his medical treatment.[4] *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). The only issue for resolution of appellant's other claims was whether the restrictions imposed on appellant's access to the prison law library, or the scope of the contents of the library, deprived him of his constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977). Neither issue was novel or complex.

Lastly, nothing about the appellant himself militated in favor of appointing counsel. He neither alleged nor exhibited any functional difficulty which would prevent his adequately preparing and presenting his case. *Cf. McCarthy v. Weinberg*, 753 F.2d 836, 839 (10th Cir.1985) (petitioner suffered from multiple sclerosis, was confined to a wheelchair, and had trouble communicating, impaired eye sight and hearing); *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir.1984) (petitioner was relatively uneducated generally and totally uneducated in legal matters); *Maclin v. Freake*, 650 F.2d 885, 889 (7th Cir.1981) (petitioner was confined to a wheelchair and in constant pain); *Drone v. Hutto*, 565 F.2d 543, 544 (8th Cir.1977) (petitioner suffered from mental illness). Instead, appellant exhibited relative familiarity with the legal process. His pleadings were well drafted, and frequently accompanied by carefully researched briefs. Appellant had already successfully moved to amend his initial complaint, and had moved for summary judgment, submitting affidavits and a brief in support of the motion.

In short, this case presented no exceptional circumstances which would support the appointment of counsel. The district court did not abuse its discretion by denying appellant's request.

The other issues raised by the appellant do not require prolonged discussion.

*Quashing of Trial Subpoenas.*

■ Appellant next argues that the district court erred by refusing to subpoena all of the witnesses named on his witness list. Appellant requested that the court issue trial subpoenas to twenty-one[5] witnesses, including fourteen members of the prison staff and seven inmates. Defendant moved to quash the subpoenas served on the prison staff, offering instead to provide five witnesses, two of whom had been requested by the appellant.

The court reviewed the witness list, and the synopsis of anticipated testimony of each witness submitted by the appellant, and concluded that many of the witnesses would provide repetitive or irrelevant testimony. The court therefore ordered the state to produce seven witnesses, five of whom were on appellant's witness list. In addition, the court issued a *habeas corpus*

---

4. In his brief to this court, appellant raises the issue whether his tooth could have been salvaged instead of pulled. As we noted before, *see* n. 2, *supra*, appellant waived this claim in his post-trial brief; he cannot resurrect it at this point. *Brook Village North Associates v. General Electric Co.*, 686 F.2d 66, 76 (1st Cir.1982).

5. Lists submitted by the appellant listed twenty-two names, but it appears that one witness was listed twice.

*ad testificandum* pursuant to 28 U.S.C. § 2241(c)(5) for one of the inmates on the list. Appellant argues that the court deprived him of his constitutional rights by quashing the subpoenas for the remaining witnesses.

We are aware of no authority, and appellant has directed us to none, which holds that an indigent litigant is constitutionally entitled to subpoena an unlimited number of witnesses, including prisoners, without the payment of witness fees, and without a more substantial showing of need for the testimony of the requested witnesses. Courts which have considered the issue have reached precisely the opposite conclusion. *E.g., Johnson v. Hubbard,* 698 F.2d 286, 288–89 (6th Cir.) *cert. denied* 464 U.S. 917, 104 S.Ct. 282, 78 L.Ed.2d 260, (1983) (right of access to the courts does not require that the court pay a party's witness fees); *Mosby v. Mabry,* 697 F.2d 213, 214 (8th Cir.1982) (trial court has discretionary power to refuse to subpoena witnesses to prevent abuse of process). *See also United States Marshals Service v. Means,* 741 F.2d 1053, 1056–57 (8th Cir.1984) (*en banc*) (no right under 28 U.S.C. § 1915 to have witness fees paid at government expense). In any event, it does not appear from the record that the district court's determination that testimony would be duplicitous and unnecessary was erroneous. The effect of the court's ruling was, to some extent, offset by giving permission to the appellant to introduce evidence from the excluded witnesses in the form of affidavits. We do not think that the actions of the district court in quashing the subpoenas and refusing to grant *habeas* petitions for the other inmate witnesses amounted to abuse. *Mosby v. Mabry, supra,* at 214. *Denial of Relief.*

We see no reason to disturb the conclusion of the district court that appellant was not entitled to relief on any of his claims.[6]

■ (1) *Adequacy of the prison law library.* At trial, the contents of the law libraries at the prison were listed and described by the inmate attorney for the prison. Lists of the contents of the two libraries were introduced as evidence. The sole argument raised on appeal is that the library did not provide meaningful access to the courts because it did not contain books specifically instructing inmates "how to" file court actions challenging the conditions of their confinement. Appellant is asking for too much. The library contained numerous volumes on prisoner's rights, civil rights, habeas corpus, and legal research, as well as appropriate reporters, encyclopedias, dictionaries, and statute books. We think no more is required. *See Bounds v. Smith,* 430 U.S. 817, 819 n. 4, 97 S.Ct. 1491, 1493–94 n. 4, 52 L.Ed.2d 72 (1977).

■ (2) *Denial of access to the law library.* We agree with the conclusion of the trial court that the temporary restrictions imposed on appellant's access to the law library did not unconstitutionally restrict his access to the courts. While appellant is correct that the evidence does not support the trial court's finding that appellant had access to a satellite law library, this error does not affect the outcome of the case. The initial quarantine period, during which time an inmate's access to the prison law library is restricted, is relatively brief. In an emergency situation, library access would be made available to an inmate. Transporting an inmate from the maximum-security SHU to the prison library posed a security risk and required extra custodial care, which prison authorities wished to avoid if possible. Appellant did not allege any specific harm which occurred as a result of the temporary restrictions imposed on him. We cannot say that prison authorities acted impermissibly or unreasonably by imposing this short-term initial quarantine period. *See Hatfield v. Bailleaux,* 290 F.2d 632, 638 (9th Cir.) *cert. denied* 368 U.S. 862, 82 S.Ct. 105, 7 L.Ed.2d 59 (1961). "[M]aintenance of security, internal order and discipline [are] 'essential

---

**6.** Since we conclude that appellant failed to prove he was entitled to any relief, we need not address what relief would have been appropriate had he prevailed.

goals,' which at times require the 'limitation or retraction of ... retained constitutional rights.'" *Block v. Rutherford,* 468 U.S. 576, 104 S.Ct. 3227, 3228, n. 8, 82 L.Ed.2d 438 (1984), quoting *Bell v. Wolfish,* 441 U.S. 520, 546, 99 S.Ct. 1861, 1877–78, 60 L.Ed.2d 447 (1979). The restrictions involved in this case did not go too far.

■ (3) *Delay in providing dental care.* Appellant acknowledges that he would prevail on this issue only if he demonstrated "deliberate indifference to serious medical needs," amounting to "unnecessary and wanton infliction of pain," "repugnant to the conscience of mankind." *Estelle v. Gamble,* 429 U.S. 97, 105–06, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). The findings of the trial court, for which there was ample support in the evidence, lead to no such conclusion.

*Issues Addressed by the Trial Court.*

■ Next, appellant contends that the trial court erred by not addressing a matter alleged in the pleadings but never raised at trial. We have recently held that an issue raised in the pleadings only was not "presented" to the trial court, and cannot be argued on appeal. *Wallace Motor Sales Inc. v. American Motor Sales Corporation,* 780 F.2d 1049 (1st Cir.1985). Thus appellant is precluded from raising this issue at this time.

*Admission of Hearsay.*

Appellant's final contention, that the trial court erred by allowing the admission of hearsay, is frivolous. The testimony he now claims should have been excluded is testimony he himself introduced; in addition, it was obviously harmless.

The judgment of the district court is affirmed.