Rose v. Warden                    CV-02-347-JD  01/24/03

### UNITED STATES DISTRICT COURT FOR THE
### DISTRICT OF NEW HAMPSHIRE

Joseph V. Rose

    v.                                      Civil No. 02-347-JD
                                      Opinion No. 2003 DNH 017

Jane Coplan, Warden,
New Hampshire State Prison, et al.


### REPORT AND RECOMMENDATION


Before the Court is the complaint[1] of plaintiff Joseph V. Rose, who has filed suit against the New Hampshire State Prison ("NHSP") and a number of its employees pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights resulting from physical abuse, denial of his right to petition the government for a redress of grievances, inadequate medical and mental health care, and harassment during his incarceration at the NHSP.[2]  As Rose is proceeding both *pro se* and *in forma*

_____

[1]Plaintiff has filed a complaint (document no. 1) and two addenda to his complaint (document nos. 6 & 8).  Although the addenda fail to comport with the requirements of United States District Court for the District of New Hampshire Local Rule ("LR") 15.1, I will accept the two addenda and consider them as part of the complaint.  Plaintiff is advised that any future attempts to addend or amend his complaint must comply with LR 15.1.

[2]The defendants named by Rose are: the NHSP, NHSP Warden Jane Coplan, Correctional Officers Jim Dunne, Mark Jordan, Cpl.

*pauperis*, the matter is currently before me for preliminary review. See LR 4.3(d)(2). As explained fully herein, in an Order issued simultaneously with this Report and Recommendation, I direct Rose's excessive force claim to be served on defendants Dunne, Bettis, Crowley, Jordan, Leitner, and Morrison and the violation of the right to petition the government for a redress of grievances claim to be served on Moyer. I recommend dismissal of the remaining claims and defendants from this action as the complaint does not allege any claim upon which relief might be granted as to those claims and defendants.

In addition to his complaint, Rose has filed three motions for the appointment of counsel (document nos. 5, 7 & 14). For reasons stated herein, the motion is denied.

Standard of Review

In reviewing a *pro se* complaint, the court is obliged to construe the pleading liberally. See Ayala Serrano v. Lebron Gonzales, 909 F.2d 8, 15 (1st Cir. 1990) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) to construe *pro se* pleadings liberally in favor of the *pro se* party). At this preliminary stage of review, all factual assertions made by the plaintiff and

Britt Morrison, Cpl. McCleod, Jeff Bettis, April Crowley, Eric Leitner, Ash, Barnoski, and Unit Manager Matt Moyer.

2

inferences reasonably drawn therefrom must be accepted as true. See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996) (stating the "failure to state a claim" standard of review and explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true).  This review ensures that *pro se* pleadings are given fair and meaningful consideration.  See Eveland v. Dir. of C.I.A., 843 F.2d 46, 49 (1st Cir. 1988).

Background

1.   Excessive Force

   A.   May 19, 2002

Rose alleges that on May 19, 2002, between 2:00 p.m. and 2:30 p.m., Correctional Officer ("C.O.") Dunne and C.O. Bettis entered his cell and forcefully handcuffed him.  Rose did not resist.  Dunne forced Rose to the floor.  Rose was then brought to the dayroom where he was uncuffed and instructed to strip.  Dunne then grabbed Rose by the neck.  Rose states that although he did take action to stop Dunne at that point, he did so in self defense.  Dunne slammed Rose's face into the wall three times before pushing him to the floor.  Dunne then kicked Rose in the ribs and chin, causing some pain and injuries.  Rose states that he only resisted after he had been slammed against the wall and

3

kicked.  Rose further alleges that prior to and during this incident, he was repeatedly threatened by Dunne.

B.  June 3, 2002

Rose alleges that on June 3, 2002, between 8:00 p.m. and 9:00 p.m., he was forcibly extracted from his cell and placed on a stretcher, to which he was handcuffed.  Rose states that he was "a little resistive" because he was wrongfully extracted from his cell.  As a result, he was sprayed with pepper spray which blinded him for twenty minutes.  Rose alleges that during this incident C.O. Crowley hit him twice in the eye and also hit him on the lower right side of his back.  Crowley also threatened to stab Rose in the neck and to make his life miserable.  As a result, Rose suffered from bruises and a puffy eye.

C.  June 6, 2002

Rose alleges that on June 6, 2002, C.O.'s Jordan, Leitner and Cpl. Morrison handcuffed him in the dayroom and brought him into a punitive segregation cell.  Upon entering the cell, Rose was facing the wall.  Behind him, Rose could hear Leitner urinating into the cell toilet.  Jordan then told Rose, "You know what's going to happen now."  Rose saw Morrison grab a sock from the bed in the cell.  Rose then found himself on the ground.  Morrison grabbed the elastic band of Rose's underwear with one

4

hand and stuffed the sock into Rose's mouth with the other hand. Rose, who was still in handcuffs, struggled because he believed something bad was about to happen. Jordan told Rose to "let it happen" at which point, Rose screamed, "Don't rape me!" The officers then dunked Rose's head into the urine-filled toilet and continued to abuse Rose. The officers then left Rose in the cell with a urine-soaked face, gagged with the sock and handcuffed. Rose was not uncuffed until the officers were on the other side of the locked cell door. Rose reported this incident, which he characterizes as an attempted rape, to Unit Manager Moyer, who took no action on Rose's report.

2. Inadequate Medical and Mental Health Care

Rose alleges that although he reported possibly broken ribs as a result of the May 19 incident involving Dunne, he was not provided with an x-ray. He further alleges that the pepper spray utilized against him during the June 3, 2002 incident was not washed out of his eyes. Finally, Rose states that the abuse he received at the hands of the C.O.'s caused him to have suicidal thoughts, caused him to attempt suicide, and caused him to have post-traumatic stress disorder, which were not adequately addressed by NHSP personnel.

Rose has submitted several pages of his medical records from the NHSP to the Court.[3] The records indicate that Rose was treated for a small cut to his chin and a bruised arm and rib pain after the May 19 incident. The nurse examining Rose determined that he did not appear to have a broken rib. Rose reported rib pain again a week later and again was evaluated but appeared not to have any abnormality in the area.

Rose's medical records indicate that Rose reported suicidal thoughts, accompanied by self-harming behavior with a food tray, an attempt to cut his wrists, and an attempt to strangle himself with torn underwear. The records also indicate that on more than one occasion, Rose indicated to the mental health treatment staff that his suicidal thoughts were connected to his fear of abusive C.O.'s on his housing unit. He alleges that nothing was done to rectify the situation on his housing unit. Rose was placed on a suicide watch and eventually reported that he no longer had any plan to commit suicide and would talk with mental health workers about his mental state. He was then recommended for return to his housing unit.

_____

[3]Rose's medical records will be considered part of the complaint. See Fed. R. Civ. P. 10(c) (requiring that written instruments attached to a pleading be construed as part of the pleading "for all purposes").

6

3. <u>Harassment</u>

        Rose reports several incidents that he alleges constitute harassment by the C.O.'s on his housing unit.  He states that on August 17, 2002 at 2:00 a.m. and again on August 18, 2002 at 11:30 p.m., C.O. Barnoski tapped on the outside of Rose's window with his flashlight in order to wake him up and to verbally harass him.  Rose also alleges that on August 18, Jordan and Morrison, in an effort to harass Rose, refused to allow him to shower, alleging he had assaulted a corrections officer and that he was going to be charged with assault, and repeatedly opened and closed the window in his cell door during their rounds. Further, Rose claims that Jordan made references to the alleged attempted rape on June 6, 2002 in order to harass and intimidate him.  Rose also alleged that Jordan pushed his food through his cell door in such a way as to try to make it spill and that his food was being tampered with.  Rose states that this harassment caused him to suffer from mental anguish and post traumatic stress disorder.

Discussion

1. <u>Physical Abuse/Excessive Force Claims</u>

        To state a claim for the use of excessive force by a prison official under the Eighth Amendment, an inmate must demonstrate

7

"unnecessary and wanton infliction of pain." Whitley v. Abers, 475 U.S. 312, 319-20 (1986). The main inquiry in determining whether prison officials used excessive physical force turns on "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6 (1992) (citing Whitley, 475 U.S. at 320-21). The "objectively harmful enough" component of an Eighth Amendment excessive force claim is satisfied when prison officials use force maliciously and sadistically to cause harm, whether or not significant injury is evident. Hudson, 503 U.S. at 7-8, 10. "That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "Not every push or shove, even if it may later seem unnecessary . . . violates a prisoner's constitutional rights." Id. (internal citations omitted). The Eighth Amendment excludes from constitutional recognition *de minimis* uses of physical force, provided that the force is "not repugnant to the conscience of mankind." Id. at 9-10 (citing Whitley, 475 U.S. at 327) (quoting Estelle, 429 U.S. at 106). Thus, to state a cognizable § 1983 claim for excessive force by prison officials, Rose must allege wrongdoing amounting to more than a *de minimus* use of force.

8

Rose alleges that in May and June of 2002, C.O.'s Dunne, Bettis, Crowley, Jordan, Leitner and Morrison abused him physically and unnecessarily and wantonly inflicting pain on him such that he sustained a laceration and believed that his ribs had been broken. Rose's allegations indicate that these incidents were unprovoked. Liberally construing the complaint, I find that Rose has alleged sufficiently serious assaultive incidents to allow this claim to proceed. Accordingly, in the Order issued simultaneously with this Report and Recommendation, I will direct that the excessive force claims be served on defendants Dunne, Bettis, Crowley, Jordan, Leitner and Morrison.

2. Right to Petition Government for Redress of Grievances Claim

Rose also seeks to sue Moyer, who, he alleges, did nothing when Rose reported the June 6 incident to him. The complaint does not contain any more information about Moyer's inaction and how Rose was harmed by it. To the extent that he intends to complain, however, that he attempted to file an internal grievance against Jordan, Leitner, and Morrison, but was thwarted in his efforts to do so by Moyer's inaction, he alleges a violation of his right to petition the government for redress of grievances.

9

The right to petition the government for a redress of grievances has been characterized as "among the most precious of the liberties safeguarded by the Bill of Rights." United Mine Workers v. Ill. State Bar Ass'n, 389 U.S. 217, 222 (1967). This right, in the prison context, means that inmates must be "permit[ted] free and uninhibited access . . . to both administrative and judicial forums for the purpose of seeking redress of grievances against state officers." Sostre v. McGinnis, 442 F.2d 178, 200 (2d Cir. 1971) (*en banc*), cert. denied, 404 U.S. 1049 (1972). Accordingly, because Rose has set forth facts sufficient to allege that he has been obstructed in his attempt to petition the government for grievances, I will order the claim to be served against Moyer.

3. Inadequate Medical and Mental Health Care Claims

Deliberate indifference of prison officials to the serious medical needs of an inmate constitutes cruel and unusual punishment under the Eighth Amendment. Torraco v. Maloney, 923 F.2d 231 (1st Cir. 1991) (citing Estelle, 429 U.S. at 102). In order to present a viable claim for inadequate medical care, however, a plaintiff must demonstrate: 1) a serious medical need; and 2) the defendants' purposeful indifference thereto. See Sires v. Berman, 834 F.2d 9, 12 (1st Cir. 1987). The Eighth

10

Amendment also protects an inmate from deliberate indifference to his serious mental health and safety needs. See Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558, 560 (1st Cir. 1988), cert. denied, 488 U.S. 823 (1988). To sufficiently allege that the defendants' behavior constitutes "deliberate indifference," Rose is required to allege that the defendant(s) knew of and disregarded an excessive risk to his health or safety. See Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Rose asserts that NHSP medical and mental health providers provided him with inadequate care when he was denied x-rays, his eyes were not washed after he was pepper sprayed, and he was suicidal but was returned to the housing situation which caused his suicidal thoughts and behavior. The information provided by Rose, however, indicates that the NHSP medical and mental health personnel responded promptly to Rose's need for medical and mental health care by having him evaluated by medical and mental health professionals who assessed his situation and took steps to assure that he was physically and mentally stable.

Even accepting the allegations in the complaint as true, I find that Rose has not alleged any serious medical condition which was known to and disregarded by NHSP personnel. I find that to the extent Rose has alleged a serious mental health need,

11

and that the prison's mental health treatment providers were aware of the problem, he has not alleged that they were deliberately indifferent to the problem. Rather, Rose has indicated that he was seen and assessed for the problem, that he was placed on suicide watch and that he was evaluated by both a mental health counselor and had a psychiatric consult. Although Rose was ultimately transferred back to the housing unit, an action he objected to, and it is not clear whether or not he received any other mental health treatment, there are not sufficient facts in the complaint to support the conclusion that the mental health treatment he did receive was so inadequate as to be constitutionally deficient, or that necessary care was denied to him as a result of indifference on the part of NHSP personnel. Accordingly, I find that Rose has failed to state an actionable claim for the denial of medical and mental health care and I recommend those claims be dismissed.

4. Harassment Claims

Rose alleges that the verbal and other threatening harassment he suffered at the hands of C.O.'s Barnoski, Jordan and Morrison entitles him to some relief from this Court. While the safety and security of all prisoners is protected by the Constitution, see e.g., Youngberg v. Romeo, 457 U.S. 307, 315

12

(1982), mere threats, without any physical injury resulting therefrom do not invoke Constitutional protection.  See Shabazz v. Cole, 69 F.Supp.2d 177, 198-201 (D.Mass. 1999) (citing authority to explain that abusive, verbal threats do not violate an inmate's constitutional rights).  Without an allegation of any actual, physical harm being sustained, the guards' verbal abuse and harassment may be unprofessional, but it is not unconstitutional.

5.    Theories of Defendant Liability

    A.    Individual Liability

42 U.S.C. § 1983 authorizes suits against state actors operating to deprive citizens of their constitutional rights.[4] Because I have found that Rose has alleged constitutional violations against NHSP employees Dunne, Bettis, Crowley, Jordan, Leitner, Morrison and Moyer sufficient to state a cause of action

---

[4]The statute provides in relevant part that:

> Every person who, under color of any [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and the laws, shall be liable to that party injured in any action at law, . . .

42 U.S.C. § 1983.

13

under § 1983, those individuals are proper defendants to this suit in their individual capacities.

B.     Supervisory Liability

Rose has named NHSP Warden Jane Coplan as a defendant to this suit. Because he does not allege that Coplan was present at or directly involved in the incidents alleged, I assume that Rose intends to sue Coplan in her supervisory capacity. Supervisory liability under § 1983 must "be predicated . . . only on the basis of the supervisor's own acts or omissions." Matos v. Toledo Davila, 135 F.3d 182, 192 (1st Cir. 1998). A supervisor must be "either a primary actor involved in, or a prime mover behind, the underlying violation." Camilo-Robles v. Zapata, 175 F.3d 41, 43-44 (1999). There must be "an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization" between the supervisor and the violation alleged. Id. at 44. Here, Rose's complaint does not allege that the violations and behavior he complains of were committed pursuant to NHSP policy for the treatment of inmates. Neither has Rose provided facts which would allow an inference that Coplan was involved in the violations alleged, either as a primary actor, or by tacit condonation or authorization of the acts alleged. Therefore, I

14

find that Rose has failed to state a claim against Coplan and I recommend she be dismissed from this action.

C.    Sovereign Immunity

Rose has named the NHSP as a defendant to this suit.  I presume in doing so that Rose has intended to sue the NHSP as a state agency, the New Hampshire Department of Corrections ("DOC"), and/or the state of New Hampshire for the violations alleged.  In addition to the fact that he does not cite a single act or omission attributable to either the DOC or to the State, it is well-settled that the Eleventh Amendment bars suits against states and state entities unless the state has expressly waived immunity.  See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993) (Eleventh Amendment bars all suits in federal court against states or their agencies); Will v. Mich. Dept. of State Police, 492 U.S. 58, 71 (1989) (holding that § 1983 does not override the Eleventh Amendment and that the state is not a person within the meaning of § 1983).  New Hampshire has not waived immunity for actions brought pursuant to 42 U.S.C. § 1983.  Therefore, the State of New Hampshire, the DOC and the NHSP enjoy Eleventh Amendment immunity and I recommend they be dismissed from this action.

15

To the extent that Rose seeks to sue any of the individual NHSP employees in their official capacities, official capacity suits against officers of an agency are simply "another way of pleading an action against an entity of which [the] officer is an agent." Monell, 436 U.S. at n. 55; see also Will, 491 U.S. at 71. Because I find that the NHSP, the agency employing the individual defendants to this suit, should not be held to answer to this suit, I extend that reasoning and find that Rose has not stated a cause of action against any of the defendant NHSP employees in their official capacities.

### Motions for Appointed Counsel

Rose has requested the court appoint counsel for him. There is no right to free legal representation in a civil case. Bemis v. Kelley, 857 F.2d 14, 15 (1st Cir. 1988). Rather, appointment of counsel in a civil case is left to the discretion of the court. See 28 U.S.C. § 1915(d). An indigent litigant must demonstrate that exceptional circumstances exist to justify appointment of counsel, such that without counsel the litigant most likely would be unable to obtain due process of the law. DesRosiers v. Moran, 949 F.2d 15, 23 (1st Cir. 1991); Cookish v. Cunningham, 787 F.2d 1, 2 (1st Cir. 1986) (*per curiam*). Both the type and complexity of the case and the ability of the individual

16

bringing the claim must be evaluated by a court in determining whether exceptional circumstances exist which warrant the appointment of counsel. Cookish, 787 F.2d at 2, 3 (counsel may be appointed depending on "the indigent's ability to conduct whatever factual investigation is necessary to support his or her claim; the complexity of the factual and legal issues involved; and the capability of the indigent litigant to present the case" (citations omitted)). Rose has thus far failed to establish the existence of exceptional circumstances regarding either the case or his own abilities, which would require the appointment of counsel in this case in order for Rose to obtain due process of law. Accordingly, I deny plaintiff's motion for appointed counsel without prejudice to his renewing his request should circumstances so warrant in the future.

<u>Conclusion</u>

In an Order issued simultaneously with this Report and Recommendation, I direct that the excessive force claim be served on defendants Dunne, Bettis, Crowley, Jordan, Leitner and Morrison, and the violation of right to petition the government for redress of grievances claims be served on defendant Moyer. I recommend that the inadequate medical and mental health care and harassment claims and defendants Coplan, Ash, McCleod, Barnoski,

17

and the NHSP be dismissed from this action for the reasons discussed in this Report and Recommendation. See U.S.C. § 1915A(b)(1).

If this Report and Recommendation is approved, the claims as identified herein will be considered for all purposes to be the claims raised in the complaint. If the plaintiff disagrees with the identification of the claims herein, he must do so by objection filed within ten (10) days of receipt of this Report and Recommendation, or he must properly move to amend the complaint.

Any objections to this Report and Recommendation must be filed within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. See Unauthorized Practice of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

Date:      January 24, 2003

cc:        Joseph V. Rose, *pro se*

18